**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-11-00600-CV**
_____

**IN RE COMMITMENT OF GILBERT S. SOTO JR.**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-05-04911 CV**

**MEMORANDUM TO CLERK**

You are directed to make the following correction in the Opinion dated June 13, 2013:

On page 2, in the first sentence under the heading CONSTITUTIONAL CHALLENGE, delete the word *See*. On the next line change (Tex. Crim. App. 2013) to (Tex. 2012) and on the next line change 2113 to 2013. You will give notice of the corrections to the original opinion by sending a copy of corrected page 2, accompanied by this memorandum, to all interested parties who received a copy of the original opinion.

1

Entered this 17th day of June, 2013.

PER CURIAM

In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-11-00600-CV**
_____

**IN RE COMMITMENT OF GILBERT S. SOTO JR.**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-05-04911 CV**

## MEMORANDUM OPINION

Gilbert S. Soto Jr. challenges his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012). He raises a constitutional challenge and argues the evidence is factually insufficient to support a finding that he is a sexually violent predator. We find no reversible error and affirm the judgment.

### THE STATUTE

The State was required to prove beyond a reasonable doubt that Soto is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent

offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id*. § 841.003(a). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2) (West Supp. 2012). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

CONSTITUTIONAL CHALLENGE

Soto contends that the Texas Supreme Court's opinion in *In re Bohannan,* 388 S.W.3d 296 (Tex. 2012), *cert. denied,* 2013 WL 1499264 (U.S. May 28, 2013), interpreted the SVP statute in such a way as to render sections 841.002(2) and 841.003(a)(2) of Chapter 841 facially unconstitutional. *See* Tex. Health & Safety Code Ann. § 841.002(2) (West Supp. 2012), § 841.003(a)(2) (West 2010). He argues that *Bohannan* has the effect of eliminating the requirement of a mental illness or disorder and the requirement of serious

4

difficulty controlling behavior. We have considered and rejected these arguments before. *See In re Commitment of Anderson*, 392 S.W.3d 878, 885-86 (Tex. App.—Beaumont 2013, pet. denied). We concluded *Bohannan* did not eliminate a statutory requirement or alter the proof required to find that a person is a sexually violent predator. *See id*.; *see also* Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003(a)(2). We overrule issue one.

FACTUAL SUFFICIENCY

In issue two, Soto challenges the factual sufficiency of the evidence to support a finding beyond a reasonable doubt that he is a sexually violent predator. *See In re Commitment of Day*, 342 S.W.3d 193, 206 (Tex. App.—Beaumont 2011, pet. denied) (factual sufficiency standard of review). Soto contends the State did not prove he currently has a behavioral abnormality and is likely to recidivate, and that the expert witnesses did not take into account multiple positive factors that would indicate a reduced tendency to reoffend. He asserts that because the State did not produce evidence that he committed any sex offenses or engaged in sexual misconduct during his last incarceration (nine and one-half years), the State did not establish that he is likely to commit sexually violent predatory acts. The lack of prison sexual misconduct, argues Soto, demonstrates he is able to control his behavior. Further, Soto argues that, in arriving at their conclusions, the expert

5

witnesses used only their clinical judgment, which is "subjective and speculative at best."

The State presented testimony from Dr. Dunham, a forensic psychologist, and Dr. Gaines, a forensic psychiatrist. Both testified that Soto has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. Their methodology included reviewing records and conducting an in-person interview with Soto. Dr. Dunham explained that his evaluation included review of police reports, victim statements, prison records, medical records, parole reviews, deposition transcripts, reports from other treating psychologists for Soto's victims, CPS reports, the victims' medical records, and Soto's prison disciplinary records. Dr. Gaines reviewed similar records. Both experts testified that these records are the type of records relied on by experts in their fields, and that this methodology is accepted in the fields of psychiatry and psychology.

Both Dr. Dunham and Dr. Gaines diagnosed Soto with pedophilia and sexual deviancy. Dr. Dunham also diagnosed Soto with adult antisocial behavior and found him to have psychopathic traits.

In 1991, Soto was convicted of sexual assault of his stepdaughter. He sexually assaulted the child from the time she was eight years old until she was approximately fifteen. The sexual assaults occurred almost daily for the last "two

or so" years. Soto threatened to kidnap and kill the child if she did not say she enjoyed the acts. He slapped her when she screamed. When she was fifteen, he wanted her to sign a contract stating that she could never leave him and that she would start having his babies when she turned eighteen. He threatened to hit her brothers and her mother. Upon conviction of sexual assault, he was sentenced to eight years in prison. While in prison, he wrote her letters and asked her to send him pictures of herself.

Released from prison in 1999, Soto lived in Houston and in 2001 he went to live with his parents in Lubbock. He was forty-seven or forty-eight years old. His brother and his brother's family, including Soto's three-year-old niece, also lived in the home. When Soto's mother went to work, Soto was left in the home with the three-year-old child. The records reveal that in 2001 and 2002, he committed multiple sex acts against the child over a period of nine and one-half months. Under a plea agreement, he pleaded no contest to indecency with a child. The trial court sentenced him to ten years in prison.

Soto denied he committed the offenses. He asserted the victims lied. He maintained he was impotent and could not have committed the offenses. Soto claimed his ex-wife (mother of the first victim) was physically abusing the child; he blamed his ex-wife for his difficulties; he alleged his brother or an uncle must

have committed the sexual offenses against the second child; and he blamed CPS workers. As Dr. Dunham explained, Soto's pattern was to blame everyone else. When asked how he felt about his victims, he explained that he would forgive them for putting him in jail.

At the time of trial, Soto was participating in the Sex Offender Education Program. He had refused to participate in the Sex Offender Treatment Program, an in-depth, individualized treatment program designed to help the person change the dynamic risk factors and take responsibility for his conduct. As Dr. Dunham related, Soto indicated he is not a sex offender and does not need the sex offender treatment program.

Soto argues that the absence of any sexual misconduct disciplinaries while he was in prison shows that he has the ability to control his behavior, and that the risk of reoffending is not present. The State's experts, however, testified that his lack of disciplinaries in prison is not indicative of his future conduct, because children (his target population) are not accessible to him in prison.

Dr. Dunham conducted actuarial tests, which are often used by psychologists to aid in determining the likelihood the defendant will reoffend with a sexual offense. Dunham scored Soto in the low to moderate range on both actuarials. Dunham concluded that, under the circumstances in this case, the actuarial tests are

irrelevant, because they do not take into consideration that the sexual offenses were repeated over a long period of time---seven or eight years against one child and nine and one-half months against the other. Dr. Dunham concluded that the Static-99 "grossly underestimate[es] [Soto's] true risk." And the MnSOST-R, the other actuarial, is not designed to be used for people who commit sex offenses against a family member. Both of the offenses were against Soto's family members. Dunham explained that the recommended approach is a clinically adjusted actuarial approach where the evaluator looks at the actuarial scores and then uses his clinical judgment to decide whether the scores should be higher or lower. In his opinion, Soto is at high risk for reoffending.

The jury determines the credibility of the witnesses and the weight to be given their testimony, and whether to believe some testimony and disbelieve other testimony. *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied). The jury may draw reasonable inferences from the evidence. *See Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). Soto's difficulty controlling his behavior can be inferred from his past behavior, his own testimony, and the experts' testimony. *In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 WL 5205387, at *4 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.); *In re Commitment of Wilson*, No. 09-08-00043-CV, 2009 WL

2616921, at *5 (Tex. App.—Beaumont Aug. 27, 2009, no pet.) (mem. op.). The jury heard evidence of the offenses, the multiple acts of sexual deviancy, and his reoffending against another child after being in prison for sexual assault of the first child. A rational jury could find beyond a reasonable doubt that Soto has serious difficulty in controlling his behavior and has a behavioral abnormality that makes him likely to commit future acts of sexual violence. We conclude the evidence is factually sufficient to support the verdict. Issue two is overruled.

The judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on April 10, 2013
Opinion Delivered June 13, 2013

Before McKeithen, C.J., Gaultney and Kreger, JJ.