In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-11-00561-CV

_____


IN RE COMMITMENT OF CHARLES STEVEN CHAPMAN

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-01-00305 CV**

_____

**MEMORANDUM OPINION**

The State of Texas filed a petition to civilly commit Charles Steven Chapman as a sexually violent predator under the Sexually Violent Predator Act. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012). A jury found Chapman suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id*. § 841.003. The trial court entered a final judgment and an order of civil commitment under the Act. We affirm the judgment of the trial court.

In eight issues, Chapman argues on appeal that the trial court erred in admitting certain evidence, the trial court demonstrated bias and deprived him of a fair trial by making certain comments during trial, the evidence is factually insufficient to support the jury's verdict, the State violated Chapman's Fifth Amendment rights, the trial court committed charge error, and the Texas Supreme Court's recent construction of the SVP statute renders the statute facially unconstitutional.

## I.    FACTUAL BACKGROUND

Chapman has convictions for sexual assault, attempted sexual assault, improper photography/video recording with the intent to arouse or gratify, and promotion of child pornography.  Chapman was first exposed to pornography at the age of ten and it became a "part of [his] everyday life."  He told the jury that he "enjoyed voyeurism" and "wanted to see what [he] wasn't supposed to see."  He explained that at the time he committed the offenses, he had "an obsession with pornography[.]" Chapman testified that he first engaged in voyeurism at the age of twenty-six, when he and a friend set up a camera and secretly videotaped strippers dancing naked.  He also explained that while in the United States Air Force he was promiscuous and began making sex tapes of his consensual sexual encounters.

2

While in the service, he received a letter of reprimand after a girlfriend reported him for filming them having sex.

Chapman explained that he began filming women without their knowledge while they changed in dressing rooms by secretly setting up cameras. He also admitted that he filmed people at nude beaches without their knowledge. He stated that he had a "fascination almost to the point of obsession [with] looking at teenage girls naked." The police investigated Chapman after J.R., a woman he met on an online dating site, called 911 and reported that she woke up to find that Chapman had disrobed her and was attempting to video her sexual organs. When the police searched Chapman's home in conjunction with J.R.'s complaint, they found video footage of other women, either naked or partially naked, including video footage of Chapman sexually assaulting two different women who appeared to be either sleeping or unconscious. Both women Chapman was seen sexually assaulting in the video footage were his wife's sisters. Chapman was ultimately charged and convicted of sexually assaulting and recording improper video of his former sister-in-law, A.S., and for the attempted sexual assault of J.R.

When police confiscated Chapman's computer, they found over 100,000 pornographic pictures on it. Their investigation revealed 2,213 child pornographic pictures and sixty-nine child pornographic videos. In addition, police found

3

eighteen photographs of women who were either asleep or unconscious and in some state of undress with their breasts, vagina, or buttocks exposed. In three of the photographs, the lead investigator identified Chapman's arm based on jewelry he was wearing. Police also found six similar older photographs developed from film. Chapman was sentenced to two years for improper video footage, seven years for sexual assault, and eight years for attempted sexual assault. Chapman went to prison in November 2004.

## II.     ADMISSION OF EVIDENCE

In issue one, Chapman complains that the trial court erred in admitting the video footage from one of his convictions that showed Chapman sexually assaulting A.S. while she was either sleeping or unconscious. The video depicted separate incidents involving five different women in various stages of undress. Dr. Timothy Proctor testified that police found the video in Chapman's home during a search conducted in conjunction with their sexual assault investigation. At trial, Chapman admitted he made the video.

The portion of the video played for the jury only involved the incident with A.S., and was approximately four minutes and fifty seconds long. The video begins focused on the buttocks of a woman who appears to be sleeping in bed wearing only a t-shirt and underwear. Chapman illuminates the view for the camera with a

4

handheld light. The video shows Chapman's hand move the woman's underwear to expose her vaginal area. In an effort to further expose the woman's vagina for the camera, the video depicts Chapman sexually assault the woman with his hands. The evidence established that A.S told law enforcement officers she believed that Chapman had put something in her drink.

At trial, Chapman re-urged his pretrial objection to the admission of the video on the grounds that it was not relevant, any probative value was substantially outweighed by the prejudicial effect, and that it was confusing and misleading to the jury. Chapman argues that the trial court erred in admitting the video because it was not relevant. Chapman contends that by the time the video was admitted into evidence, the qualifying sexual offenses had already been established when the court granted the State's motion for directed verdict, which established that Chapman had been convicted of two or more sexually violent offenses. Chapman argues that the video was "only intended to inflame the passions of the jury and was not relevant to the ultimate issues[.]"

The admission of evidence is reviewed under an abuse of discretion standard. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *In re Commitment of Salazar*, No. 09-07-345 CV, 2008 WL 4998273, at \*2 (Tex. App.—Beaumont Nov. 26, 2008, pet. denied) (mem. op.). A trial court

5

abuses its discretion when it acts without reference to any guiding rules or principles. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). A judgment will not be reversed based on the admission of evidence unless the appellant establishes that the trial court's ruling was in error and that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Salazar*, 2008 WL 4998273, at *2; *see Owens-Corning Fiberglas Corp.*, 972 S.W.2d at 43; *see also* Tex. R. App. P. 44.1.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. Evidence that is not relevant is not admissible. Tex. R. Evid. 402. Both of the State's experts watched the video and relied on it in making their determination that Chapman suffers from a behavioral abnormality. Only a short portion of the video was shown to the jury. While graphic, the video displayed the depth and nature of Chapman's voyeurism to the jury. It served to show the lengths to which Chapman was willing to go in order to obtain this type of video footage, and also depicts the escalation of his voyeurism to sexual assault.

We conclude the trial court did not abuse its discretion in admitting the video over Chapman's relevance objection. *See* Tex. R. Evid. 401. Additionally,

6

even if the trial court had erred in admitting the video, we conclude any such error was harmless. *See* Tex. R. App. P. 44.1. Given the nature of this case, and the other evidence presented at trial, the video was not reasonably calculated to, nor did it probably cause the rendition of an improper verdict. *See id.* We overrule issue one.

In issues two and three Chapman argues that the trial court erred in admitting the details related to his prior offenses through the testimony of the State's experts and the admission of the video. Chapman argues in issue two that the details regarding his prior offenses, including the video, were improperly admitted for their truth. Chapman argues in issue three that this evidence should have been excluded under the balancing tests of Rules 403 and 705(d) of the Texas Rules of Evidence.

At trial, Chapman objected to the admission of evidence regarding the specific details of his prior offenses on grounds that this evidence constituted hearsay, it was irrelevant, it was unfairly prejudicial, it was needlessly cumulative, it was beyond the scope of limited admissibility, and it posed a danger of confusing and misleading the jury. The trial court overruled the objections but provided the jury with the following limiting instruction:

> Now, hearsay is a statement other than one made by the declarant, that is the person testifying or whose deposition is being presented to

7

you, at the trial or at that hearing that is offered as truth to prove the matter asserted. It turns out that hearsay, because of our view of evidence, is not admissible as evidence in a trial to prove the truth of the matter asserted. It's just not admissible in trial to prove what it presents to you.

However, hearsay contained in records examined by an expert can be admitted before you to show you the basis of the expert's opinion and to afford you the opportunity to decide the credibility, the weight to be given to the expert's opinion. Does that make sense? . . .

The trial court provided an additional limiting instruction in the jury charge, wherein the court stated that hearsay information contained in the records reviewed by the experts and admitted before the jury "was admitted only for the purpose of showing the basis of the experts' opinion and cannot be considered as evidence to prove the truth of the matter asserted."

Under Rule 705 of the Rules of Evidence, an expert may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data on which he bases his opinion. Tex. R. Evid. 705(a); *In re Commitment of Yaw*, No. 09-08-042 CV, 2008 WL 5096511, at *1 (Tex. App.—Beaumont Dec. 4, 2008, no pet.) (mem. op.). Rule 705(d) provides as follows:

When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial. If otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.

8

Tex. R. Evid. 705(d). "When an expert relies upon hearsay in forming his opinion, and it is of a type reasonably relied upon by such experts, the jury is generally permitted to hear it." *Salazar*, 2008 WL 4998273, at *4.

Trial courts have the discretion to admit the underlying facts or data on which the expert has based his opinion. *See* Tex. R. Evid. 705(d); *Boswell v. Brazos Elec. Power Coop., Inc.*, 910 S.W.2d 593, 602 (Tex. App.—Fort Worth 1995, writ denied). Chapman's admission to making the video constitutes an admission by a party opponent. *See* Tex. R. Evid. 801(e)(2). As to the hearsay evidence, Chapman did not object to the trial court's limiting instructions, nor did he request different or additional instructions at the time they were given. Further, Chapman did not object to the limiting instruction contained in the jury charge. We conclude the trial court properly applied Rule 705(d) by providing the jury with limiting instructions. *See* Tex. R. Evid. 705(d). We presume the jury followed the court's limiting instructions. *See In re Commitment of Day*, 342 S.W.3d 193, 199 (Tex. App.—Beaumont 2011, pet. denied); *Yaw*, 2008 WL 5096511, at *3 (citing *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex. 1982)).

The trial court could have reasonably concluded that the evidence at issue would be helpful to the jury to explain how the State's experts had formed their

9

respective opinions regarding Chapman's behavioral abnormality. Each expert explained the facts that he considered in forming his opinion, and each explained how the information from Chapman's records regarding his prior offenses, including the images and title logs from the videos found in his home, influenced their determination. Given the purpose for admitting the evidence at issue, and the trial court's limiting instructions, the trial court could reasonably conclude that the evidence was admissible and would not be unfairly prejudicial. *See* Tex. R. Evid. 705(d); *see also In re Commitment of Ford*, No. 09-11-00425-CV, 2012 WL 983323, at *2 (Tex. App.—Beaumont Mar. 22, 2012, no pet.) (mem. op.); *Day*, 342 S.W.3d at 199. On this record, we cannot conclude that the trial court erred in overruling Chapman's objections or that the rulings probably caused an improper judgment. *See* Tex. R. App. P. 44.1. We overrule issues two and three.

## III. FUNDAMENTAL ERROR

In issue four, Chapman argues that the trial court demonstrated bias toward him and deprived him of a fundamentally fair trial "through its erroneous evidentiary rulings" allowing repeated admission of facts regarding his prior offenses, and through comments made by the trial court. In support of this argument, Chapman relies on the testimony the State elicited from Chapman regarding his prior offenses, as well as comments made by the trial court, outside

10

the presence of the jury, during Chapman's motion for directed verdict. Chapman

cites *Pirtle v. Gregory* to support his position. 629 S.W.2d 919, 920 (Tex. 1982)

(stating that fundamental error "survives today in those rare instances in which the

record shows the court lacked jurisdiction or that the public interest is directly and

adversely affected as that interest is declared in the statutes or the Constitution of

Texas.").

Chapman argues that his own testimony regarding the details of his prior

offenses contributed to the "repetitious admission . . . of this emotionally charged

evidence[.]" At trial, Chapman testified regarding the details of his prior offenses,

without objection. And Chapman did not object to the trial court's comments that

he now contends demonstrated bias toward him.[1] Chapman filed a motion for new

---

[1] Chapman points to the following exchange that took place during Chapman's motion for directed verdict, which was made after the State rested and the jury was excused from the courtroom:

> [Respondent's Counsel]: Your Honor, we would just ask you to consider what the Respondent has requested, that the evidence is insufficient. We're not attacking the qualifications of the experts by any means. We're attacking the evidence that the State has presented. And our position is that the State has presented insufficient evidence and that a directed verdict shall be – should be granted in Respondent's favor.

> THE COURT: You're kidding, aren't you?

> [Respondent's Counsel]: Your Honor, I'm not –

11

trial, but did not raise his complaint that the trial court deprived him of a fundamentally fair trial. Likewise, Chapman did not object to the experts' testimony on the grounds that it deprived him of a fundamentally fair trial.

SVP cases are civil proceedings. *In re Commitment of Martinez*, 98 S.W.3d 373, 375 (Tex. App.—Beaumont 2003, pet. denied) ("Chapter 841 is a civil, not a criminal or quasi-criminal, statute."). Preserving a complaint that a trial court improperly admitted evidence for review on appeal requires the party contesting the admission of the evidence to timely object and to state the specific ground for the objection, if the specific ground is not apparent from the context. Tex. R. Evid. 103(a)(1); *see also* Tex. R. App. P. 33.1(a)(1)(A). We conclude Chapman failed to preserve his complaint that he was denied a fair trial. *See* Tex. R. App. P. 33.1(a).

Additionally, as is set forth above, we conclude the trial court's evidentiary rulings regarding the testimony of the State's experts were not in error. Regarding the challenged comments, Chapman acknowledges that the trial court's comments were made from the bench and outside the presence of the jury, and he cites to no authority in support of his contention that such commentary could deprive him of a

---

THE COURT: I've tried nearly 80 of these cases, and I don't think I've heard one where it is more apparent from the testimony of the experts that Respondent has a behavioral abnormality.

fair trial or otherwise constitute reversible error. *See* Tex. R. App. P. 44.1. We overrule issue four.

## IV. SUFFICIENCY OF THE EVIDENCE

In issue five, Chapman challenges the factual sufficiency of the evidence to support the jury's finding beyond a reasonable doubt that he is likely to engage in a predatory act of sexual violence. Under the provisions of the SVP statute, the State must prove beyond a reasonable doubt that "the person is a sexually violent predator." Tex. Health & Safety Code Ann. § 841.062(a). The statute defines "sexually violent predator" as a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. § 841.003(a). The statute defines "'behavioral abnormality'" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2). In reviewing the factual sufficiency of the evidence in an SVP commitment case, we must weigh the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that compels ordering a new trial. *Day*, 342 S.W.3d at 213.

13

Chapman contends that the evidence was factually insufficient to support a finding that he is likely to re-offend or has serious difficulty controlling his behavior, and that the expert witnesses did not take into account multiple positive factors that would indicate a reduced risk of re-offense.

The State presented testimony from Dr. Timothy Proctor, a forensic psychologist, Dr. David Self, a forensic psychiatrist, and Chapman. Both experts testified that Chapman has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. Both experts explained their methodology, which included reviewing records, reviewing video images confiscated from Chapman's home during the police investigation, and conducting an in-person interview with Chapman.

Dr. Proctor testified that he met with Chapman for approximately three hours. Dr. Proctor stated that Chapman had been convicted of sexual assault, attempted sexual assault, promotion of child pornography, and improper photography/video recording with intent to arouse or gratify. Dr. Proctor testified regarding the video and sexual assault committed against A.S. and the attempted sexual assault and alleged improper video of J.R. In addition, Dr. Proctor testified regarding evidence of other offenses for which Chapman was not convicted.

14

Dr. Proctor testified that he reviewed video footage found in Chapman's home of nude women showering, as well as footage of Chapman performing sexual acts on another sister-in-law, identified as A.T., who appeared to be either sleeping or unconscious. Dr. Proctor told the jury that the video confiscated from Chapman's home included footage of five different women. Dr. Proctor further explained that photographs were also confiscated from Chapman's house "of women who were asleep or unconscious in some state of undress[]" with "either their breasts[,] or vagina or buttocks or all of the above [being] exposed." Dr. Proctor also testified regarding the nature and gravity of the child pornography found on Chapman's computer.

Dr. Proctor stated that sexual deviancy is a major risk factor and based on his evaluation, Chapman has "a very strong sexual deviancy[.]" Dr. Proctor diagnosed Chapman with paraphilia, not otherwise specified, hebephilia, voyeurism, and alcohol abuse. Dr. Proctor explained these diagnoses to the jury. Dr. Proctor stated that these diagnoses are the "underpinnings" or the "major issues" that make up the condition that predisposes Chapman to commit predatory acts of sexual violence. Dr. Proctor explained, all these things "combine to show a significant level of sexual deviancy that is present[.]" Dr. Proctor testified that in his opinion Chapman has serious difficulty controlling his behavior.

In addition to reviewing records and meeting with Chapman, Dr. Proctor performed actuarial tests on Chapman. Proctor testified that Chapman scored in the moderate to low range of risk for re-offense on both the MnSOST-R and the Static-99R. But Dr. Proctor testified that he believes the low to moderate range underestimates Chapman's risk of re-offense. Dr. Proctor explained that actuarials are only "one piece of the puzzle" and that they did not take into account everything that is important about Chapman's history. Dr. Proctor stated that "given the kind of unique nature of [Chapman's] history, how much of it went undetected, how much he was sentenced for all at one time," the actuarials underestimate his level of risk. Dr. Proctor testified that he would put Chapman at "high risk" to reoffend. Proctor stated that he rated Chapman "as having a tendency to need stimulation and prone to boredom." He noted that the record indicated that Chapman was "conning and manipulative." He stated that "a callousness or lack of empathy was indicated by his sexual offending in particular." Dr. Proctor also testified that Chapman has had a large number of sexual partners.

Dr. Proctor testified that he considered risk factors as well as protective factors in making his determination. Dr. Proctor explained the positive factors that he considered in this case such as Chapman's age, the fact that he has some social

16

support, has a history of a long-term, live-in relationship, has no male victims, is not a psychopath, has displayed good institutional adjustment, has no history of nonsexual violence, and has plans to be on supervision while on release. Dr. Proctor also discussed the risk factors that played a role in his determination. Dr. Proctor identified the following risk factors in Chapman's case: sexual deviance; extensively non-consenting sexual contact; voyeurism; sexual interest in teenagers and possibly prepubescent children; multiple sex offense convictions, including a military reprimand; multiple sex offense charges that did not result in conviction; a significant history of uncharged sexual offending; sexual promiscuity; noncontact sexual offenses; a history of unrelated victims; a history of stranger victims; use of force during sexual offenses; multiple acts on a single victim within a single offense; multiple victim age groups; alcohol abuse history; ongoing issues with minimization and denial; and the fact that Chapman has not completed a substance abuse program or sex offender treatment program. Dr. Proctor acknowledged that "all these risk factors increase his likelihood of committing a sexually violent offense." In Dr. Proctor's opinion, these offenses were predatory acts committed for the purpose of victimization.

Dr. Self testified that in addition to reviewing the records, and viewing the video footage, he met with Chapman for about one and one-half hours. Like Dr.

17

Proctor, Dr. Self explained that he considers risk factors in making his determination. Dr. Self stated that he observed some "central threads" and "an evolving process" in reviewing Chapman's offense history. According to Dr. Self, Chapman's offenses became more "assaultive" as he continued offending. In addition, Dr. Self believed that Chapman was aware that his criminal behavior was escalating. Dr. Self testified that Chapman's offense history is some evidence that he has a condition that affects his emotional or volitional capacity, is evidence that he is a menace to the health and safety of others, and supports his finding that Chapman has a behavioral abnormality.

Like Dr. Proctor, Dr. Self also discussed the risk factors he considered in making his determination. Dr. Self testified that Chapman's sexual deviance is "highly varied." He stated that Chapman "talks about sex with immobilized people and this extreme bondage thing that's of interest to him." Dr. Self explained that these interests were "all about control over [another] human being." He testified that Chapman was obviously a voyeur and noted that Chapman admits to being sexually attracted to teenage girls. He told the jury that the evidence in the records suggests that Chapman also had a sexual interest in children and had "video clips of children doing these really disgusting sexual things."

18

Dr. Self indicated that he also believed that Chapman's sexual deviance had escalated beyond mere voyeurism. Dr. Self told the jury that he did not believe the women in the photographs and video footage were sleeping or mildly intoxicated. Dr. Self stated, "I've seen people on heavy-duty sedatives and hypnotic drugs, and I believe that's what it is." Dr. Self stated that the progression of his offense from voyeurism to pornography to assaultive behaviors was a risk factor he considered as well as the absence of any kind of treatment. Dr. Self also identified factors he referred to as "absent negatives" that he considered in making his determination. Specifically, Dr. Self considered the fact that Chapman did not have much nonsexual offense history; was not antisocial; was not a psychopath; received no disciplinaries in prison; and has no homosexual history.

Dr. Self diagnosed Chapman with paraphilia, not otherwise specified; voyeurism; hebephilia; a provisional diagnoses of pedophilia; and alcohol abuse. Dr. Self explained these diagnoses to the jury. He testified that these diagnoses are evidence that Chapman suffers from a condition that affects his emotional or volitional capacity. In Dr. Self's opinion, "it's pretty clear that [Chapman's] ability to exercise his will, to make good decisions and control his behavior and resist impulses, his emotional state is clearly affected by his condition." Dr. Self stated these diagnoses provide evidence that Chapman is a menace to the health and

19

safety of others and support his determination that Chapman suffers from a behavioral abnormality.

Chapman also testified regarding the history of his voyeurism and how it began, as well as the details of his offenses. Chapman admitted that he had a problem with pornography, admitted he had an attraction to teenage girls, admitted he had an interest in extreme bondage, admitted that his sexual interests have affected his decision-making, and admitted he could benefit from sex offender treatment.

The jury determines the credibility of the witnesses and the weight to be given their testimony. *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied). The jury is entitled to believe or disbelieve witness testimony. *Id*. Additionally, the jury may draw reasonable inferences from the evidence. *See Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). Drs. Proctor and Self testified regarding the affect Chapman's condition has on his ability to control his behavior and resist impulses. In addition, the jury can infer Chapman has difficulty controlling his behavior from Chapman's past behavior, Chapman's testimony, and the experts' testimony. *See In re Commitment of Soto*, No. 09-11-00600-CV, 2013 WL 2732082, at *3 (Tex. App.—Beaumont June 13, 2013, no. pet. h) (mem. op.); *In re Commitment of Burnett*, No. 09-09-

0009-CV, 2009 WL 5205387, at \*4 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). The jury heard evidence regarding Chapman's offenses and the depth and escalation of his sexual deviancy. Weighing all the evidence, the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. The evidence is factually sufficient to support the jury's verdict. We overrule issue five.

## V. CONSTITUTIONAL ERROR

In issue six, Chapman argues that the State violated Chapman's Fifth Amendment rights by repeatedly asking questions for which Chapman had invoked his right against self-incrimination. In a supplemental brief, Chapman also argues that the Texas Supreme Court's recent construction of the SVP statute renders it facially unconstitutional.

The United States Constitution guarantees that a person may not be compelled to testify or give evidence against himself. *See* U.S. CONST. amend. V; Tex. Const. art. I, § 10; *see Maness v. Meyers*, 419 U.S. 449, 461, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975). The Fifth Amendment can be asserted in civil cases "'wherever the answer might tend to subject to criminal responsibility him who gives it.'" *Tex. Dept. of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995) (quoting *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S. Ct. 16, 69

21

L. Ed. 158 (1924)). In support of his claim that the trial court violated his Fifth Amendment right against self-incrimination, Chapman points to the following exchange during the State's case in chief:

> [The State:] And you took pictures of [K.A.] while she slept?
>
> [Chapman:] I took the Fifth Amendment on that, sir.
>
> [The State:] Well, there was a picture taken from your house where [K.A.'s] breasts were exposed while she was sleeping on the couch; is that correct?
>
> [Chapman:] That's correct.
>
> [The State:] And, I guess, you're taking the Fifth Amendment on this because you're afraid of possible charges?

At this point, Chapman's counsel objected and instructed Chapman not to answer the question. The trial court heard argument from counsel outside the presence of the jury and then took a brief recess. When the jury returned, and without specifically ruling on the prior objection, the court told the State "[y]ou may ask your next question." At this time the State began questioning Chapman about the videotapes police found in his home.

> [The State:] Now, Mr. Chapman, during the deposition I asked you about other women that you have taped without their consent. Right?
>
> [Chapman:] Yes, sir, you did.
>
> [The State:] And I showed you the tapes that the police found at your house. Right?

22

[Chapman:] Yes, sir.

[The State:] And it included about six different episodes of taping women; is that right?

[Chapman:] I don't remember the exact number. That seems a little high, but that's possible.

[The State:] I guess, it included the videotape of [A.S.], of your sexual assault. Right?

[Chapman:] Yes, sir.

[The State:] And it included the videotape of [A.T.] and the charges for the sexual assault?

[Chapman:] Yes, sir.

[The State:] And it also included a videotape of a woman taking a shower?

[Chapman:] Yes, sir.

[The State:] I believe during your deposition you took the Fifth. Are you still taking the Fifth on that, the woman taking the shower?

[Chapman:] No, sir.

[The State:] You're not taking the Fifth?

[Chapman:] No, sir.

[The State:] Did you make that video?

[Chapman:] I did.

Chapman argues that this second line of questioning was related to "the alleged offense for which [Chapman] had already invoked the Fifth Amendment" and that "[t]he trial court erred in permitting the State to continue with its line of questioning and rendered [Chapman's] assertion of his Fifth Amendment protections useless." We disagree with Chapman's reading of the record. The State's second line of questioning pertained to the video confiscated from Chapman's home by police, whereas the prior line of questioning pertained to a photograph found in Chapman's home. Blanket assertions of the Fifth Amendment privilege are not permitted in civil cases. *See In re Commitment of Lowe,* 151 S.W.3d 739, 745 (Tex. App.—Beaumont 2004, pet. denied). Because the trial court has a duty to consider the merit of the application of the privilege against self-incrimination for each question for which it is asserted, the assertion of the privilege must be raised in response to each specific question or it is waived. *Lowe*, 151 S.W.3d; *In re Speer*, 965 S.W.2d 41, 46 (Tex. App.—Fort Worth 1998, no pet.).

Chapman did not answer, and was not instructed to answer the State's question regarding whether he took the photograph of K.A. During the State's second line of questioning, Chapman affirmatively stated that he was not asserting the Fifth Amendment. During this testimony, Chapman admitted that he made the

24

video and testified regarding its content without objection and without the assertion of any privilege or constitutional right. Chapman has failed to establish the trial court violated his Fifth Amendment rights. *See Lowe*, 151 S.W.3d at 745; *see also In re Commitment of Hayden*, No. 09-11-00099-CV, 2011 WL 6229562, *2 (Tex. App.—Beaumont Dec.15, 2011, no pet.) (mem. op.). We overrule Chapman's sixth issue.

Chapman also argues that the Texas Supreme Court's recent construction of the SVP statute rendered the statute facially unconstitutional and violated the Fourteenth Amendment's due process clause. *See In re Commitment of Bohannan*, 388 S.W.3d 296, 306 (Tex. 2012). Chapman contends that the Court's opinion in *Bohannan* effectively eliminated two constitutional prerequisites to involuntary civil commitment, specifically that a person suffer from a mental condition or disorder and, that the person has serious difficulty controlling their behavior. We disagree with Chapman's reading of the *Bohannan* decision. In *In re Commitment of Anderson*, this Court stated: "We do not read the *Bohannan* opinion as eliminating a statutory requirement, or as altering the proof required under the statute to find that a person is a sexually violent predator." 392 S.W.3d 878, 886 (Tex. App.—Beaumont 2013, pet. denied). We recognized that the Supreme Court

in *Bohannan* did not "change the statute or render it unconstitutional." *Id*. at 885. We overrule Chapman's constitutional challenge.

## VI. CHARGE ERROR

In issue seven, Chapman argues that the trial court committed reversible error by refusing to bifurcate the jury charge. During the charge conference, Chapman objected to charge and presented a proposed charge that asked the following separate questions: 1) "Do you find beyond a reasonable doubt that [Chapman] suffers from a behavioral abnormality?" and 2) "If a behavioral abnormality does exist, do you find beyond a reasonable doubt that the behavioral abnormality makes [Chapman] likely to engage in a predatory act of sexual violence?" The trial court refused to submit these questions to the jury. Instead, the trial court submitted the following question to the jury: "Do you find beyond a reasonable doubt that [Chapman] suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence? Chapman asserts that he was entitled to have the jury question subdivided to clarify the issue for the jury.

We have previously rejected the argument that this broad form question should be subdivided into two parts. *See In re Commitment of Elkins*, No. 09-10-00557-CV, 2012 WL 2849164, at \*3 (Tex. App.—Beaumont July 12, 2012, no pet.) (mem. op.); *In re Commitment of Reed*, No. 09-11-00484-CV, 2012 WL

26

1072255, at *3 (Tex. App.—Beaumont Mar. 29, 2012, no pet.) (mem. op.). "When, as here, a case is governed by a statute, the jury charge should track the language of the statutory provision as closely as possible." *Reed*, 2012 WL 1072255, at *3. Texas Rules of Civil Procedure require the trial court to submit the case upon broad form questions "whenever feasible." Tex. R. Civ. P. 277. The jury charge submitted by the trial court tracked the language of the statute, was submitted in broad form, and provided the jury with definitions and instructions to assist the jury in answering the question of whether Chapman suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. § 841.003(a)(2). We overrule issue seven.

Having overruled all Chapman's appellate issues, we affirm the trial court's judgment and order of civil commitment.

AFFIRMED.

                               _____
                                      CHARLES KREGER
                                        Justice

Submitted on March 19, 2013
Opinion Delivered September 5, 2013

Before McKeithen, C.J., Kreger and Horton, JJ.