In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-11-00613-CV
IN RE COMMITMENT OF CHARLES PHILIP ANDERSON

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-02-02043 CV**

**OPINION**

Charles Philip Anderson challenges his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012) (the SVP statute). A person is a "sexually violent predator" subject to commitment if the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. § 841.003(a) (West 2010). Anderson challenges the sufficiency of the evidence to support the jury's verdict, and he challenges some of the trial court's evidentiary rulings. He attacks some of the judge's comments, the judge's ruling on a demonstrative exhibit, and the judge's fairness. Anderson claims that certain provisions of the SVP statute are unconstitutional. We hold the evidence is sufficient, sections 841.002(2) and

1

841.003(a)(2) are constitutional, the rulings and comments of the trial court do not support a reversal, and the record does not establish judicial bias. We affirm the judgment of the trial court.

SUFFICIENCY OF THE EVIDENCE

Anderson challenges the legal and factual sufficiency of the evidence to support a finding that he has serious difficulty controlling his behavior and that he is likely to engage in a predatory act of sexual violence. His argument is that he has not engaged in any sexual misconduct during the ten years of his second incarceration, and this, he argues, demonstrates he is not dangerous and does not suffer from a serious lack of control. He suggests that the experts and the jury could not "reasonably or constitutionally infer" that he has serious difficulty controlling his behavior "based on his more than ten-year old past acts of sexually offending."

In the legal sufficiency challenge, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). The factual sufficiency challenge to the SVP commitment order requires this Court to weigh the evidence to determine whether a verdict supported by legally sufficient evidence nevertheless reflects a risk of injustice so great that we are compelled to grant a

2

new trial. *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

Anderson has a history of sexual offenses: indecency with a child in 1985; sexual assault of a child in 1989; attempted sexual assault of a female adult in 1989; and aggravated sexual assault in 2001. He pleaded guilty to each offense. He served approximately eight years in prison and was released in 1997. On the aggravated sexual assault offense, he was sentenced in 2002 to ten years.

The State's experts, Dr. Price and Dr. Self, testified that Anderson suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Quijano, the defendant's expert, testified Anderson no longer has a behavioral abnormality. The experts had similar diagnoses for Anderson: paraphilias, antisocial personality disorder, and significant psychopathic personality traits. Dr. Price and Dr. Self diagnosed Anderson with sexual deviancy. Dr. Quijano and Dr. Price indicated Anderson suffers from depression.

Dr. Quijano testified for the defense that Anderson also has bipolar disorder and has taken medication for the condition. The State's testifying experts disagreed with the bipolar disorder diagnosis. Dr. Quijano testified medication is helping Anderson, and the previous condition affecting the behavioral abnormality is no longer present. Quijano testified that if Anderson quits taking his medication, "we have to assume that the mania will come back and then of course the effect of the mania on the volitional capacity will

3

come back." Although Quijano testified that Anderson is "overall compliant" in taking his medications, he also explained, as did the State's experts, that Anderson is at times non-compliant.

Dr. Price testified to four major reasons for his opinion that Anderson has a behavioral abnormality. Price explained that Anderson has chronic sexual offending in his history, different types of sexual offending, escalating sexual offending, and a current perception that he did not commit these sexually violent offenses and does not need treatment. Dr. Price testified that Anderson is a sexual deviant. Price explained that a sexual deviant is a person who becomes aroused and engages in abnormal sexual behavior. Sexual deviance is a paraphilia that is outside of what is normal in the context of sexual behavior, thinking, and feeling. Based on records reviewed by Price, Anderson's own testimony, Anderson's current perceptions about the offenses, and actuarial test results, Price testified Anderson is a menace to society and has a behavioral abnormality that makes him likely to commit a predatory act of sexual violence.

Dr. Self testified that sexual deviancy and a history of sexual offenses are "high on the list" of risk factors for "future acts." Self found that Anderson's pattern of criminality and his antisocial and unstable lifestyle, combined with the sexual deviancy, create a heightened risk of reoffending. Self also found significant Anderson's minimizing or denial of the offenses and the lack of empathy for his victims, a characteristic that Self described as a lack of "social brakes." Dr. Self concluded that Anderson was seeking the

4

excitement and sexual arousal from overpowering someone else and forcing that person to do Anderson's will sexually. Dr. Self characterized the pattern as "stepping up, where the behavior that was exciting and gratifying to an extent loses its thrill over time and the individual has to step up to kick it up a notch and get more intensity." Self did not diagnose Anderson with bipolar disorder. But, as Self explained, if Anderson is bipolar, he was not compliant with his medication while he was in prison, and there is an extremely high probability that he will be non-compliant over time. Moreover, Self testified there is no pill that can cure someone's sexual deviancy or behavioral abnormality, and no pill that can obviate the risk that Anderson will commit acts of predatory sexual violence.

The expert witnesses offered explanations for the absence of sexual misconduct disciplinaries during Anderson's second incarceration. Price testified that inmates who have been in prison a long time have learned the system; by the time of Anderson's second incarceration, he had learned how to follow the rules. Price suggested that aging and medications are factors contributing to the lack of sexual disciplinaries during the second incarceration. Dr. Quijano indicated that the lack of sexual misconduct disciplinaries was attributable to the positive effects of medication.

Anderson testified that his medication has had little, if anything, to do with the absence of sexual reoffending for the last ten years. And on appeal, he states that the evidence regarding bipolar disorder, medication treatment for it, and periodic non-

5

compliance with medication is not relevant. He further maintains that age has changed and mellowed him and lessened his sex drive, and he asserts he can control his sexual urges.

The record establishes that Anderson committed sexually violent offenses while he was on probation for a sexually violent offense, after he received sex offender treatment, after he received medications for the alleged bipolar disorder, and after he served time in prison for commission of a sexually violent offense. Anderson declined the most recent offer of sex offender treatment. He testified that he still has a problem controlling his urges, and that he is concerned about reoffending.

The evidence supports the jury's verdict. The jury was entitled to draw reasonable inferences from basic facts to determine ultimate fact issues, and to resolve conflicts and contradictions in the evidence by believing all, part, or none of a witness's testimony. *In re Commitment of Barbee*, 192 S.W.3d 835, 842 (Tex. App.—Beaumont 2006, no pet.). Considering all the evidence in the light most favorable to the verdict, we conclude the jury could reasonably find beyond a reasonable doubt that Anderson has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The record does not reflect a risk of injustice that compels granting a new trial. Issues one and two are overruled.

Anderson challenges evidentiary rulings of the trial court. He argues the trial court erred in admitting details of his prior criminal offenses. He asserts that Dr. Price went beyond using evidence of the prior offenses for the purpose of explaining the basis for his opinion and used the evidence for the purpose of establishing the truth of the details. An expert may disclose details regarding the underlying facts or data that the expert relied on in arriving at his opinion, subject to the trial court's application of the balancing test and providing any requested necessary limiting instructions. *See In re Commitment of Ford*, No. 09-11-00425-CV, 2012 WL 983323, at **1-2 (Tex. App.—Beaumont Mar. 22, 2012, no pet.) (mem. op.); *In re Commitment of Day*, 342 S.W.3d at 199; *see also* Tex. R. Evid. 703, 705. Price used Anderson's criminal history, as appellate counsel acknowledges, for the "legitimate purpose of explaining the significance of the escalation of [Anderson's] sexual offenses that he committed before 2002 . . . ."

Anderson argues that the evidence should have been excluded because the "sordid details" of the offenses had very little probative value and, under Rule 403, were unfairly prejudicial. *See* Tex. R. Evid. 403. Evidence is unfairly prejudicial when it has an undue tendency to suggest that a decision be made on an improper basis, commonly, but not necessarily, an emotional one. *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002) (citing *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999)). In applying Rule 403, factors that should be considered include the probative value of the evidence,

the potential of the evidence to impress the jury in some irrational way, the time needed to develop the evidence, and the proponent's need for the evidence. *Montgomery v. State*, 810 S.W.2d 372, 389-390 (Tex. Crim. App. 1991) (op. on reh'g). Here, each expert explained the facts considered and how those facts affected that expert's evaluation. The evidence assisted the jury in weighing the testimony and the opinion each expert offered. The trial judge could reasonably conclude the experts' testimony was not unfairly prejudicial. *See In re Commitment of Day*, 342 S.W.3d at 199. We overrule issue three.

Anderson contends that the State should not have been allowed to question him about the details of one of the sexually violent offenses to which he pleaded guilty. Anderson denied many of the details of the offense. Anderson's attorney voiced objections in the trial court: hearsay; hearsay documents; and reading from the police report. The trial court overruled the objections and noted that it was not apparent that the State's attorney was reading from the police report. The report was not in evidence. Moreover, the argument on appeal -- essentially that the trial court's limiting instruction was insufficient -- is not the same as the the objections defense counsel made in the trial court. *See Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639-40 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (Because objection in trial court did not comport with complaint on appeal, the objection was waived.); *see also* Tex. R. App. P. 33.1; *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986). A reviewing court generally presumes a

jury followed a trial court's limiting instruction. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003). We overrule issue four.

In issue five, Anderson contends the trial court erred in admitting Dr. Quijano's testimony that Anderson may have committed unknown sex offenses. Anderson argues the evidence was purely speculative and was not relevant to any issue in this case. The State asked Dr. Quijano, who testified on Anderson's behalf, if "sex offenders often have committed more sex offenses than they have been arrested for[.]" He answered "yes" and agreed that possibly Anderson had sexually assaulted people that "we don't even know about[.]" Anderson testified he exposed himself approximately 3,000 times. The record, including Anderson's own testimony and Dr. Quijano's complete testimony, does not support the argument that Dr. Quijano's statement caused an improper result in the trial. Any error in allowing the question and the admission of Dr. Quijano's statement during the State's cross-examination does not require reversal of the judgment in this case. *See* Tex. R. App. P. 44.1. Issue five is overruled.

CLOSING ARGUMENT

Anderson argues the trial court erred by "effectively instructing" the jury during closing jury arguments to ignore a critical portion of his defense. During closing argument, Anderson's counsel stated as follows:

> This is a case of a mentally ill person who has been criminalized in the system. It is time to tell them no. It is time to say you are going to get proper medical care for someone who needs it. Not throw away the key and

9

> say that this is just going to be further consequences for something that happened[.]

The State objected that Anderson's counsel was, in effect, testifying about the effect of the verdict. The trial judge responded, "I am going to tell the jurors you are to ignore the effect of what your verdict is going to have. Okay?" The trial court did not instruct the jury to ignore Anderson's defenses. *See generally Magic Chef, Inc. v. Sibley*, 546 S.W.2d 851, 857 (Tex. Civ. App.—San Antonio 1977, writ ref'd n.r.e.) (argument concerning legal effect of answers); *see also Louisiana & Ark. Ry. Co. v. Capps*, 766 S.W.2d 291, 295-96 (Tex. App.—Texarkana 1989, writ denied). We overrule issue six.

### DEMONSTRATIVE AID AND ALLEGATIONS OF BIAS

Anderson contends the trial court demonstrated bias and deprived him of a fair trial by continuously displaying a demonstrative visual aid during the testimony of the State's expert witnesses, and by disparaging defense counsel during her cross-examination of the State's experts. During the testimony of Dr. Price, the State's attorney asked, "[I]n arriving at your opinion, did you answer the question whether you thought Mr. Anderson had a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence?" The State's attorney then asked whether it would aid the jury for the State to display the question, and Dr. Price stated that it would be of assistance to the jury. The question was apparently displayed for the jury's view. Shortly thereafter, defendant's attorney requested that the display be removed. The trial judge denied the request and stated as follows:

10

> This is the issue they are going to be asking about. So it is not a big deal. . . . This is the only thing this jury is focusing on. And I think it is good it is up there. So you guys should be focused and those are questions you should be asking about.

Later defense counsel again objected to the "continuing display [of] the words 'suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.'" The judge stated as follows:

> Well, the record is not really too clear what is going on here. For the record, it is on an Elmo which is on the screen TV which is in front of the jury. And essentially it is the question that the jury is asked. That definition is given to them in the jury charge. It is not an incorrect statement of the law. And I think that it helps, at least will encourage, the lawyers to ask questions about this question because sometimes it seems that they get a little adrift. So I am going to overrule your objection. When you present your case, you can take it down or we will have the State take it down.

The demonstrative aid contained statutory language. Defense counsel objected "to this as not being a complete quote from the statute and an incomplete part of the question." The display apparently included the second part of the definition of sexually violent predator. The applicability of the first part of the definition -- whether Anderson is a repeat sexually violent offender -- was not in dispute. The trial court offered to allow defense counsel to "[p]ut the rest of it up there." The trial judge then stated, "It certainly doesn't mislead the jury."

Anderson does not refer us to any authority precluding the use of a demonstrative aid under these circumstances. The quotation from the statute was the question the jury was required to answer in arriving at its verdict; the quotation was not misleading. *See*

11

*generally Henricks v. State*, 293 S.W.3d 267, 276 (Tex. App.—Eastland 2009, pet. ref'd) (Trial court allowed investigator to have PowerPoint presentation as an aid for the jury to understand the testimony; "[a] witness may be allowed to demonstrate before the jury so as to make her testimony more plain and clear.").

Anderson argues the trial judge displayed bias against his counsel during the trial. The trial judge questioned the relevance of some of defense counsel's questions and stated that the court would display the question again until trial counsel could "keep in mind what the goal is here." Anderson also directs us to defense counsel's cross-examination of Dr. Self during which the trial judge stated as follows:

> [Defense counsel], ask your questions. If [the witness] needs to have his recollection refreshed, he can do that. But don't just ask questions and try to put documents into evidence in front of the jury. Okay? I have already done that. I told you that once. Ask another question, please.

Trial judges have broad, though not unfettered, discretion in handling trials. *Metzger v. Sebek*, 892 S.W.2d 20, 37-40 (Tex. App.—Houston [1st Dist] 1994, writ denied); *see also In re Commitment of Barbee*, 192 S.W.3d at 847-48. A trial court has inherent power to control the disposition of cases with economy of time and effort, exercising that power without bias and with patience, and in a manner that promotes confidence in the judge's impartiality. Considering the entire record and the comments in context, we cannot conclude the judge's comments constitute reversible error under the circumstances. *See* Tex. R. App. P. 44.1. We overrule issue seven.

UNIFIED ISSUE

In a supplemental brief filed after the Supreme Court's recent decision in *In re Commitment of Bohannan*, Anderson argues that the Supreme Court rendered sections 841.002(2) and 841.003(a)(2) facially unconstitutional and in violation of the Fourteenth Amendment's due process clause. *See In re Commitment of Bohannan*, No. 10-0605, 2012 WL 3800317, at \*\*4-5 (Tex. Aug. 31, 2012). He also contends that the Court eliminated the requirement that the person must have "serious difficulty controlling behavior." But the Court did neither.

*Bohannan* did not eliminate any proof required by the statute for a sexually-violent-predator finding, nor did the Supreme Court change the statute or render it unconstitutional. A requirement for finding someone a sexually violent predator is that the person must suffer from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. § 841.003(a). The Supreme Court stated that after "[b]oiling it down," the definition of behavioral abnormality is "'a . . . condition that . . . predisposes' sexually violent conduct." *In re Commitment of Bohannan*, 2012 WL 3800317, at \*4. The Court explained that "condition and predisposition are one and the same[,]" and the question of "whether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *Id*. at \*\*4-5.

13

This Court and the Third Court of Appeals have addressed arguments similar to those made by appellant, and noted that serious difficulty controlling behavior is embedded in the definition of "behavioral abnormality." *See In re Commitment of Almaguer*, 117 S.W.3d 500, 502-07 (Tex. App.—Beaumont 2003, pet. denied) (holding that no separate definition of emotional or volitional capacity as meaning serious difficulty controlling behavior was necessary); *In re Commitment of Browning*, 113 S.W.3d 851, 862-63 (Tex. App.—Austin 2003, pet. denied) (holding that no separate jury question of serious difficulty controlling behavior was necessary). We said in *Almaguer*:

> The statutory criteria submitted to the jury under the Texas statute in this case describes the severity of the behavioral abnormality and the severity of the danger which must be present to subject the person to civil commitment. The statutory definition describes behavior caused by an abnormality that makes the person a menace to the health and safety of another person. *See* § 841.002(2). In answering the question submitted to it, the jury found that Almaguer suffers from a behavioral abnormality that "predisposes" him, and makes him "likely," to engage in a predatory act of sexual violence, to the extent that he is a menace to the health and safety of another. *See* §§ 841.002(2), 841.003.

*In re Commitment of Almaguer*, 117 S.W.3d at 505. The Austin Court of Appeals previously explained:

> A finding that a person suffers from an emotional or volitional defect so grave as to predispose him to threaten the health and safety of others with acts of sexual violence entails a determination that he has "serious difficulty controlling behavior."

*In re Commitment of Browning*, 113 S.W.3d at 863 (citing *In re Commitment of Mullens*, 92 S.W.3d at 884-87 (evidence relating to defined abnormality legally sufficient to prove

14

serious difficulty in controlling behavior)). An affirmative answer to the question of whether a person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence necessarily entails a determination that he has serious difficulty controlling behavior. As the United States Supreme Court stated in *Kansas v. Hendricks*, "[W]e have never required State legislatures to adopt any particular nomenclature in drafting civil commitment statutes. Rather, we have traditionally left to legislators the task of defining terms of a medical nature that have legal significance." *Kansas v. Hendricks*, 521 U.S. 346, 359, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

We do not read the *Bohannan* opinion as eliminating a statutory requirement, or as altering the proof required under the statute to find that a person is a sexually violent predator. We overrule the issue in Anderson's supplemental brief.

Appellant's issues are overruled. The trial court's judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on August 1, 2012
Opinion Delivered January 24, 2013

Before McKeithen, C.J., Gaultney and Horton, JJ.

15