In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00571-CV

_____

IN RE COMMITMENT OF JESSE DE LEON CARMONA III

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-02-02068 CV**

_____

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Jesse De Leon Carmona III as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012). A jury found that Carmona is a sexually violent predator and the trial court rendered a final judgment and an order of civil commitment. On appeal, Carmona challenges the legal and factual sufficiency of the evidence and the constitutionality of the SVP statute. We affirm the trial court's judgment.

1

## Constitutionality Challenge

Carmona argues that the Texas Supreme Court's decision in *In re Bohannan* interpreted portions of the SVP statute in such a way as to render the statute facially unconstitutional and in violation of the Fourteenth Amendment's due process clause. *See generally In re Commitment of Bohannan*, 388 S.W.3d 296 (Tex. 2012), *cert. denied*, 133 S. Ct. 2746 (2013). We have previously rejected a similar argument. *See In re Commitment of Anderson*, 392 S.W.3d 878, 885 (Tex. App.—Beaumont 2013, pet. denied). Therein we noted, "*Bohannan* did not eliminate any proof required by the statute for a sexually-violent-predator finding, nor did the Supreme Court change the statute or render it unconstitutional." *Id*. We overrule Carmona's issue that argues the SVP statute is unconstitutional.

## Sufficiency of the Evidence

In his first two issues, Carmona challenges the legal and factual sufficiency of the evidence to support the jury's verdict. The State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a). Because the SVP statute employs a beyond-a-reasonable doubt burden of proof, under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment

2

under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). The factfinder has the responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.003(a). A "'behavioral abnormality'" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* at § 841.002(2). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior

3

control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

At trial, Carmona admitted that he pleaded guilty to two cases of aggravated sexual assault of a child. Although he pleaded guilty to assaulting his little sister when she was around six years old, he denied responsibility indicating that she initiated the sexual contact with him. He is about eight years older than his sister. He admitted that he had previously told a doctor that he initiated sexual contact with his sister, but at trial he testified he was only telling the doctor what he knew the doctor wanted to hear. He testified that he does not believe his sister is a victim. Carmona also admitted to sexually assaulting a five-year-old boy.

Despite these admissions, Carmona testified that he does not believe that he is a threat to children because he currently has no sexual urges for children. Carmona testified that he sexually assaulted the five-year old boy because he was curious. Carmona testified he is not in any sex offender treatment program, but stated that he plans to get therapy regarding his sexual offenses as well as regular therapy when he gets out of prison.

Dr. Michael Arambula, a forensic psychiatrist, testified Carmona has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Arambula described his education, training, and experience to the jury.

4

He testified that he is board certified in general and forensic psychiatry. He described the methodology he uses in evaluating people for a behavioral abnormality. He explained that experts in his field use this methodology for evaluating sexual dangerousness. He testified that he used this methodology in evaluating Carmona. His evaluation of Carmona was in accordance with his training and the accepted standards in his field of forensic psychiatry. Prior to meeting with Carmona he reviewed another expert's report, the investigative records from Carmona's two aggravated sexual assault convictions, Carmona's DPS records, the victims' statements, Carmona's statements, his prison records, his medical records, and the deposition transcripts in this case. Arambula testified that he met with Carmona for two and a half hours.

Arambula explained that part of his methodology in evaluating individuals for a behavioral abnormality is to look at risk factors. He explained to the jury that Carmona's sexual deviance is a major risk factor supporting his finding of a behavioral abnormality. He testified that Carmona's sexual deviance is pedophilia. He stated that Carmona also suffers with antisocial personality.

Arambula testified in detail regarding Carmona's sexual deviancy with his little sister that started in the mid 1990's when she was approximately six years old. He noted that the record indicated that Carmona had multiple incidents

5

involving his sister. He explained that Carmona's persistence of sexual abuse is significant because the number of occurrences elevates his risk of reoffending. He also described how Carmona's acts against his sister progressed over time. He testified that Carmona has higher risk because his sister was so young when he began to abuse her. Arambula testified that during his interview with Carmona, Carmona denied assaulting his sister. He testified that extensive denial and minimization is part of sexual deviance, and Carmona continues to deny what he did to his sister. He stated that Carmona shows no remorse for his actions against his sister and is angry with her, which Arambula explained is suggestive of the seriousness of Carmona's illness. Arambula also testified that his interview with Carmona was inconsistent with statements Carmona had made to other doctors. For example, Carmona had previously admitted to having sexual intercourse with his sister, but only denied that it had happened multiple times.

Arambula discussed Carmona's second aggravated assault case. He testified that Carmona's stepmother ran a daycare from her home and that Carmona molested a boy from her daycare. Arambula testified that because this child was a stranger victim, it raised Carmona's risk of reoffending. He testified that Carmona admitted to this sexual assault, but blamed the five-year-old boy for initiating the

assault. He testified that Carmona did admit to and accept some of his actions regarding this child and that was a good starting point in addressing his illness.

Arambula testified that he reviewed records that revealed that a third child made an outcry against Carmona to CPS. He testified that CPS's investigation of the daycare indicated that Carmona had abused two children at the daycare. While the second incident was reported to the police, the child's family was uncomfortable with putting the little boy on the stand. He also recalled some kind of familial relationship between Carmona's family and the child's family that deterred them from wanting the case prosecuted. Arambula testified that Carmona continues to deny that anything happened with this child, which Arambula explains is further indication that his sexual deviance is still present.

Arambula testified that he diagnosed Carmona with sexual deviance and pedophilia. He explained that he used the DSM-IV-TR to diagnose Carmona's pedophilia. Arambula testified that pedophilia is a chronic condition that does not go away. He testified that pedophilia is a dangerous sexual condition because the victims are children who are vulnerable. Arambula testified that Carmona has never had sex offender treatment for his sexual deviancy or pedophilia, which increases his risk for reoffending. Arambula testified that Carmona's belief that he does not need treatment is further indication that he does not even know he has a

sexually deviant condition, which also increases his risk of reoffending. Arambula testified that Carmona's age also increases his risk. He explained that Carmona started offending in his teenage years and that typically, the prognosis for reoffending is worse for younger offenders.

Dr. Marisa Mauro, a forensic psychologist, testified for Carmona. After reviewing his records and interviewing Carmona, Mauro testified that she did not diagnose Carmona with sexual deviance or paraphilia. She testified in her opinion Carmona does not meet the DSM criteria for sexual deviance or paraphilia because she did not see enough evidence to support a pattern of behavior. She administered the Static-2002R, the Static-99R, and the PCL-R to Carmona. She explained that the Static-2002R and the Static-99R are used to measure future risk for recidivism. She scored Carmona with a six under the Static-2002R, indicating a moderate risk of recidivism. She scored Carmona at a four under the Static-99R, indicating a moderate to high risk for recidivism. She recalled that another expert involved in Carmona's case scored him at a six under the Static-99R, indicating he has a high level of risk for recidivism. However, Mauro testified that she believes Carmona has a moderate risk of reoffending. She explained to the jury the basis of her opinion and the various factors she used to form her opinion of Carmona's risk. She testified that she does not believe Carmona has a behavioral abnormality

8

because she does not believe he has a congenital or acquired condition that affects his emotional or volitional capacity that would predispose him to commit sexually violent offenses.

On appeal, Carmona challenges the sufficiency of the evidence by arguing that Dr. Arambula's testimony was conclusory and failed to support a finding that Carmona suffers from a behavioral abnormality or has serious difficulty controlling his behavior. We disagree. Arambula interviewed Carmona and reviewed another expert's report, considered Carmona's background, his offenses, and statements from his victims. Arambula relied on the types of records relied upon by experts in his field and performed his evaluation in accordance with his training as a forensic psychiatrist. Arambula based his opinions on the facts and data he gathered from the records, his interview with Carmona, and the risk assessments he conducted. He explained in detail the facts and evidence he found relevant in forming his opinions and how those facts played a role in his evaluation. Arambula concluded that Carmona suffers from a behavioral abnormality as defined by the SVP statute. His testimony is not "mere *ipse dixit*" as Carmona argued in his brief.

While the jury also heard from Carmona's expert, Dr. Mauro, contesting Arambula's testimony, the jury determines the credibility of the witnesses and the

weight to be given their testimony, and whether to believe some testimony and disbelieve other testimony. *See Mullens*, 92 S.W.3d at 887. In addition to Arambula's testimony concerning Carmona's behavioral abnormality that makes him likely to engage in predatory acts of sexual violence, the jury heard Carmona's admissions and testimony as well as evidence of his risk factors, criminal history, sexual offenses, and diagnosis. The jury could reasonably conclude that Carmona has serious difficulty controlling his behavior and is likely to engage in a predatory act of sexual violence. *See id.* These conclusions are implicit in the jury's finding that Carmona suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Grinstead*, No. 09-07-00412-CV, 2009 Tex. App. LEXIS 228, at *16 (Tex. App.—Beaumont Jan. 15, 2009, no pet.) (mem. op.); *see also In re Commitment of Bailey*, No. 09-09-00353-CV, 2010 Tex. App. LEXIS 6685, at **12-14 (Tex. App.—Beaumont Aug. 19, 2010, no pet.) (mem. op.).

Viewing all the evidence in the record in the light most favorable to the verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Carmona has a behavioral abnormality that predisposes him to commit a predatory act of sexual violence; therefore, the evidence is legally sufficient. *See Kansas v. Crane*, 534 U.S. 407, 413 (2002); *see also Mullens*, 92 S.W.3d at 885.

10

Furthermore, weighing all of the evidence, we conclude the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule Carmona's issues and affirm the trial court's judgment and order of civil commitment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on July 1, 2013
Opinion Delivered October 24, 2013

Before McKeithen, C.J., Gaultney and Kreger. JJ.