In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00271-CV

_____


IN RE COMMITMENT OF MICHAEL JEROME SMITH

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 11-07-08058 CV

## MEMORANDUM OPINION

Michael Jerome Smith appeals from an order of commitment, rendered following a trial in which the jury found Smith to be a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2013) (SVP statute). Smith challenges the judgment in thirteen issues; however, resolving Smith's appeal requires that we consider just three of Smith's issues, issues one, three, and seven. In issue one, Smith challenges the constitutionality of the SVP statute. In issue three, Smith asserts the trial court erred by failing to enter a directed verdict against the State on its claim that he was previously convicted of

1

having committed more than one sexually violent crime. In issue seven, Smith asserts that during voir dire, the trial court abused its discretion by refusing to allow his attorney to ask a question that he argues was relevant to his ability to intelligently exercise his peremptory strikes. We overrule issues one and three. However, we agree with Smith that the trial court's error in voir dire constitutes an abuse of discretion and that the error was harmful. We reverse the trial court's judgment, and remand the case so that Smith can receive another trial.

Rendition Issues

Before addressing issue seven, we must first consider the arguments Smith has raised in issues one and three, as Smith's arguments on these issues, if successful, would require that we render judgment in Smith's favor. *See Lone Star Gas Co. v. R.R. Comm'n of Tex.*, 767 S.W.2d 709, 710 (Tex. 1989) (per curiam). In issue one, Smith challenges the constitutionality of the SVP statute. Smith contends the SVP statute, as interpreted by the Texas Supreme Court in *In re Commitment of Bohannan*, 388 S.W.3d 296, 302-03 (Tex. 2012), *cert. denied*, 133 S.Ct. 2746 (2013), is facially unconstitutional and violates his Fourteenth Amendment right to due process. In issue three, Smith contends the trial court should have granted his motion for a directed verdict on the State's claim that he is a "repeat sexually violent offender" under the SVP statute. *See* Tex. Health &

Safety Code Ann. § 841.003(b) (West Supp. 2013) (requiring the State to demonstrate that a "repeat sexually violent offender" has previously been convicted of more than one sexually violent offense).

*Constitutional Claims*

In Smith's first issue, he argues that sections 841.002(2) and 841.003(a)(2) of the SVP statute are facially unconstitutional and violate his Fourteenth Amendment right to due process. *See id.* §§ 841.002(2), 841.003(a)(2) (West Supp. 2013). We considered and rejected these same arguments in other SVP commitment proceedings, beginning with *In re Commitment of Anderson*, 392 S.W.3d 878, 885-86 (Tex. App.—Beaumont 2013, pet. denied). In *Anderson*, we explained that "[w]e do not read the *Bohannan* opinion as eliminating a statutory requirement, or as altering the proof required under the statute to find that a person is a sexually violent predator." *Id.* at 886. We are not persuaded that *Anderson* should be overruled; we overrule Smith's first issue.

*Directed Verdict*

One of the arguments that Smith raises in his third issue would require us to render judgment in his favor if we agreed with Smith that the State failed to prove that Smith is a *repeat* sexually violent predator. According to Smith, his 1993 conviction for indecency with a child does not qualify as a prior "sexually violent

offense" under the SVP statute because the 1993 judgment of conviction does not state that Smith's conviction was for indecency with a child "by contact." *See* Tex. Health & Safety Code Ann. §§ 841.002(8)(A), 841.003 (West Supp. 2013); *and compare* Tex. Penal Code Ann. § 21.11(a)(1), (d) (West. 2011)[1] (making sexual contact with a child a second degree felony), *with id.* § 21.11(a)(2), (d) (West 2011) (making the exposure of certain parts of the actor's or child's body for the purpose of sexual gratification a third degree felony).

Under the SVP statute, the State must prove beyond a reasonable doubt that "the person is a sexually violent predator." Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). The SVP statute defines "sexually violent predator" as a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). A person is a "repeat sexually violent offender" if the person is convicted of more than one sexually violent offense. *Id.* § 841.003(b). "'Sexually violent offense'" is defined by the SVP statute to include, among other things, offenses under 21.11(a)(1) (indecency with a child by sexual contact), and 22.021 (aggravated sexual assault). *Id.* § 841.002(8); Tex. Penal Code

---

[1] Because subsequent amendments to section 21.11 do not change the outcome of Smith's appeal, we cite the statute's current version.

4

Ann. § 21.11(a)(1), § 22.021 (West Supp. 2013). However, a conviction for indecency with a child by exposure is not a qualifying sexually violent offense under the SVP statute. *See* Tex. Health & Safety Code Ann. § 841.002(8)(A).

Smith argues that the evidence is legally insufficient to show that his 1993 indecency conviction was for indecency with a child by contact. But, Smith's 1993 judgment of conviction, which was admitted into evidence during Smith's trial, indicates Smith was convicted of a second degree felony, the degree that is associated with a conviction for indecent exposure by contact. *See* Tex. Penal Code Ann. § 21.11(d). Smith's indictment, which led to his 1993 conviction was also admitted into evidence—it alleges that Smith committed indecency by contact.

Indecency by contact is a second degree felony. *Id*. § 21.11(a). Indecency by exposure is a third degree felony. *Id*. § 21.11(d). We conclude that the evidence shows that Smith was convicted of indecency with a child by contact, not indecency by exposure.

Based on the evidence at trial, the trial court properly denied Smith's motion for directed verdict, which asserted the State had failed to show that he was a repeat sexually violent predator. To the extent that Smith argues the State's

5

evidence was legally insufficient to prove that Smith was previously convicted of two sexually violent offenses, issue three is overruled.[2]

## Remand Issue

In issue seven, Smith complains the trial court prevented his attorney from asking the array the following question: "Who thinks that African Americans are more likely to commit crimes than white people?" The attorney for the State objected, claiming that Smith's question asked the prospective jurors for a commitment. At that point, the trial court intervened, ruling:

> Why don't you ask the proper questions about your client[?] Ask the proper question about your client about racism. Can everybody give Mr. Smith, even though he is an African American, a fair trial. Everyone, raise your hand. Raise your hand now because I want to know.

None of the prospective jurors responded to these statements. When one of the prospective jurors asked the trial court to repeat its statement, the trial court stated:

> Knowing Michael Jerome Smith is African American, can you give him a fair trial? Anybody can't give Michael Jerome Smith a fair trial knowing he is African American? Okay. Thank you very much.

---

[2]Smith's remaining issue three arguments, as well as his other issues, issue two, issues four through six, and issues eight through thirteen, do not raise arguments—if resolved in Smith's favor—that would result in Smith being granted relief greater than he has obtained based on our resolution of issue seven. Therefore, we do not address Smith's other issue three arguments, or issues two, four through six, or eight through thirteen. *See* Tex. R. App. P. 47.1.

Again, none of the prospective jurors responded. Immediately after the trial court thanked the prospective jurors, Smith's attorney asked if any of the array had "used the 'N word.'" Seven people responded by raising their hands. Only one of these seven ultimately served on the jury. None of Smith's other questions of the prospective jurors asked about the prospective jurors' views regarding the frequency with which African Americans commit crimes. In addition to the question about using racially pejorative language, the other questions Smith's attorney asked the prospective jurors about racial issues generally—a question about whether the prospective jurors would worry about being treated fairly if they were faced with a trial by a group consisting largely of persons from a different race, and a question about whether the justice system treated minorities fairly— were asked before the trial court told Smith's attorney to ask proper questions.

The standards regarding jury selection in SVP cases are clear. "A party selecting jurors for trial must be given latitude to intelligently use its peremptory challenges to seat a jury that, to the greatest extent possible, is free from bias." *In re Commitment of Hill*, 334 S.W.3d 226, 228 (Tex. 2011) (per curiam). During voir dire, the parties should be allowed the opportunity to identify potentially biased jurors to prevent them from serving on a jury. *See In re Commitment of Barbee*, 192 S.W.3d 835, 845 (Tex. App.—Beaumont 2006, no pet.). The attorneys should

also be allowed to gather information to exercise their peremptory challenges intelligently. *See Hill*, 334 S.W.3d at 228. While the trial court must give the parties' attorneys latitude in jury selection to discover bias and to discover information to intelligently exercise their strikes, the attorneys' right to question prospective jurors remains subject to the trial court's right to exercise reasonable control over the proceedings. *See id.* at 228-29.

With respect to an attorney's right to ask a particular question during voir dire, the question of whether a court has exercised proper discretion "turns on the propriety of the question: 'a court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges.'" *Id.* at 229 (quoting *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989)). In Smith's case, the trial court apparently agreed with the State that the question posed regarding whether African Americans commit crime at a higher rate than Caucasians was an improper commitment question.

We disagree that the question asked the jurors to make a commitment. The question at issue did not seek to test the weight that prospective jurors might place on the evidence later admitted at trial. The question at issue also did not ask prospective jurors to do or not to do something. The question about the rate that

8

African Americans commit crime was also not irrelevant, as the evidence in Smith's trial, like that in other SVP trials, addresses whether Smith (who happened to be African American) would likely engage in a future sexually violent offense. *See* Tex. Health & Safety Code Ann. § 841.003 (defining the term "sexually violent predator" for purposes of the SVP statute to require evidence showing the person "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence"). We conclude the question at issue did not ask for a commitment and it was a proper question.

The State contends that by failing to rephrase the question or by failing to tell the trial court of the purpose for the question, Smith waived his right to appellate review. However, the purpose of the question was apparent to the trial court from the circumstances of the case—Smith is African American, the case would involve whether Smith is likely to reoffend, and the trial court was aware of those facts. Smith's attorney was also not required to rephrase the question—it was not improper. *Hill*, 334 S.W.3d at 229.

The record also shows the trial court's ruling not to allow the question was harmful. The candid admissions by seven members of the array, immediately after the trial court disallowed Smith's more general question probing the prospective

9

jurors' racial views, establish both the propriety of the question at issue and the trial court's abuse of discretion in denying Smith the right to ask it. *Id*.

The question of harm requires that we consider the impact of the trial court's error after considering all of the questions asked in voir dire. The trial court's question about whether the prospective jurors could give Smith a fair trial is a different question about racial prejudice that personalized the question to Smith. Specifically, the trial court's question about whether the array members could give Smith a fair trial as an African American is not designed to reveal a prospective juror's general racial bias toward a group. Nonetheless, the fact the trial court asked the question shows the trial court was aware that Smith's counsel desired to probe the prospective jurors regarding racial bias that was relevant to Smith's case; but the trial court's question potentially allowed prospective jurors who held a general racial bias, but not specific bias toward Smith, to serve on the jury.

The State also criticizes Smith's attorney for not asking additional questions on bias. However, by telling Smith's attorney to ask proper questions, the trial court signaled that it would not allow follow-up questions probing whether any of the prospective jurors had a general racial bias toward African Americans that grew from a perspective that members of the group frequently committed crimes. The follow-up question about the use of the "N word" did not concern the

10

prospective juror's views on whether African Americans commit crime more frequently than Caucasians. Whether Smith was likely to commit additional crimes of sexual violence was one of the issues the jury would consider in his case. Because the trial court prevented Smith's attorney from obtaining information relevant to whether prospective jurors had a general racial bias that related to the question concerning perceptions about recidivism, the trial court prevented Smith's attorney from being able to intelligently exercise Smith's peremptory strikes and prevented Smith from discovering which prospective jurors Smith should challenge for cause. *See id.* at 228, 230. Under the circumstances, we disagree with the State that the trial court's error should be characterized as harmless. Tex. R. App. P. 44.1.

We hold that the trial court's error in rejecting Smith's question was harmful. We reverse the trial court's judgment and remand the case to the trial court to conduct a new trial.

REVERSED AND REMANDED.

_____
HOLLIS HORTON
Justice

Submitted on March 4, 2014
Opinion Delivered June 26, 2014
Before McKeithen, C.J., Horton and Johnson, JJ.

11