**Opinion issued December 19, 2019.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-18-01050-CV**

————————————

**IN RE COMMITMENT OF MARK EDWARD LANGFORD, Appellant**

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 94640-CV**

## MEMORANDUM OPINION

The State filed a civil petition to commit appellant Mark Edward Langford for involuntary treatment and supervision as a sexually violent predator.[1] After the jury found that Langford was a sexually violent predator, the trial court rendered a final judgment and an order of civil commitment. Langford raises two issues on appeal

---

[1]    TEX. HEALTH & SAFETY CODE §§ 841.001–.153.

challenging the admission of the contents of a letter sent to the parole board by someone claiming to be one of his victims. In two issues, Langford argues that the trial court abused its discretion by allowing the State's expert to testify about the contents of the letter because the information was hearsay and its probative value was outweighed by the danger of unfair prejudice. Finding no error, we affirm the trial court's order of civil commitment.

## Background

In September 1994, a jury found Langford guilty of aggravated sexual assault of five-year-old Lori Black[2] in Cause # 24,448 in Brazoria County. Langford subsequently pleaded guilty to Aggravated Sexual Assault of Child; Criminal Episode in Cause # 28,664 in Brazoria County. This indictment alleged that Langford committed two offenses against eleven-year old Cindy Smith in the same criminal episode. Langford also pleaded guilty to Aggravated Sexual Assault of Child; Criminal Episode in # 25,822 in Brazoria County. This indictment alleged that Langford committed three offenses against seven-year old Ginny Smith, and one offense against her six-year old sister, Tammy Smith, all in the same criminal episode. All these sexual assaults occurred in 1991-1992. Langford's punishment was assessed at thirty-three years' incarceration for all seven counts, with the

---

[2]  To protect the children's identities, we refer to them by pseudonyms.

sentences to run concurrently. Assuming he is not paroled, Langford will be released from prison in 2027.

In December 2017, the State petitioned to have Langford declared a sexually violent predator under the Sexually Violent Predator (SVP) Act, alleging that he was a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* TEX. HEALTH & SAFETY CODE § 841.003(a). Langford was evaluated by the State's expert, Dr. Sheri Gaines, who concluded that Langford met the statutory requirement of behavioral abnormality. The State's petition was tried to a jury.

Langford filed a motion in limine asking the court to prevent the State from mentioning or eliciting testimony about a letter that one of Langford's victims had written to the Texas Board of Pardons and Paroles, namely, a June 2007 letter from Tammy asking the board to deny Langford's request for parole.

During a pre-trial hearing on the motion, Langford's counsel argued that the letter was not reliable and was unfairly prejudicial, in part, because it contained additional details about Tammy's assault, including a new allegation that Langford had threatened to harm her if she reported the abuse. Langford's counsel also asserted that Dr. Gaines had relied upon the letter when formulating her opinion that Langford suffers from a behavioral abnormality and she requested a hearing pursuant to Texas Rule of Evidence 705(b) in order to question Dr. Gaines about the

letter and Tammy's claim that Langford had threatened her prior to the admission of any testimony on the subject.[3]

The trial court granted the request. At the conclusion of the Rule 705(b) hearing, the trial court ruled the letter was admissible because Dr. Gaines relied upon the letter when formulating her opinion.

Dr. Gaines, a board-certified psychiatrist, testified that she evaluated Langford for a behavioral abnormality, and that based on her education, training, experience, and the methodology that she employed in this case, it is her expert opinion that Langford suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dr. Gaines explained that when she evaluates someone for a behavioral abnormality, she reviews a broad array of records on that individual, including the results of psychological tests administered to the offender by previous evaluators, prison records, indictments, police reports, victims' statements, the offender's statements, and depositions in the case. She also performs a face-to-face interview of the offender. Dr. Gaines explained that this is the same methodology relied upon by other experts in her field when performing behavioral abnormality evaluations.

---

[3]   TEX. R. EVID. 705(b) ("Voir Dire Examination of an Expert About the Underlying Facts or Data. Before an expert states an opinion or discloses the underlying facts or data, an adverse party in a civil case may—or in a criminal case must—be permitted to examine the expert about the underlying facts or data. This examination must take place outside the jury's hearing.").

Tammy's letter to the parole board is just one of over 2,200 pages of records that Dr. Gaines reviewed as part of her evaluation.

Dr. Gaines testified that Langford was convicted of seven sexual offenses against four prepubescent girls, Lori, Cindy, Ginny, and Tammy. All of the assaults occurred between March 1991 and June 1992. Dr. Gaines testified that she relied on Langford's convictions and the facts underlying the convictions when formulating her opinion that Langford suffers from a behavioral abnormality. According to Dr. Gaines, the facts or the details surrounding Langford's sexual offenses are important for her analysis because they help her to identify risk factors. Risk factors are things that have been identified by the literature and group statistics that increase a person's risk of reoffending sexually.

Dr. Gaines testified that sexual deviancy[4] is a major risk factor for reoffending sexually and it was the most significant risk factor that she identified in Langford's case. Specifically, Dr. Gaines testified that she diagnosed Langford as having pedophilic disorder, exclusive type, because he is sexually attracted to prepubescent girls, and her opinion that Langford suffers from a behavioral abnormality is based in large part on Langford's sexual deviance.

---

[4]  Sexual deviancy occurs when sexual thoughts, desires, behaviors, get in the way of someone's life.

5

When asked what evidence she found of sexual deviance with respect to Tammy's sexual assault, Dr. Gaines testified that Langford has "one conviction with the genital-to-genital contact against [Tammy]. There are some other statements about some verbal threats that he made towards [Tammy] and some of those other details about the dirty dancing and the involvement of [Tammy's and Ginny's] father and ejaculating and high-fiving over the victim's body." According to Dr. Gaines, those details are useful for purposes of her assessment because they help to illustrate Langford's sexual deviancy.

Dr. Gaines further testified that another factor that increases a person's risk of reoffending sexually is making threats against his victims. She identified this risk factor for Langford from Tammy's letter. Dr. Gaines acknowledged that this was the first time that Tammy or any of Langford's other victims had claimed that Langford had threatened them, and she did not recall there being any other indication in the record that Langford had threatened his victims. In addition to Langford's sexual deviancy and the threats against Tammy, Dr. Gaines identified other risk factors in this case, including the fact that Langford claimed that five-year old Lori was the aggressor and he blamed her for the assault, he has poor insight into his offenses, he has a pattern of denying or minimizing the offenses, the number of victims, the number of assaults, the victims' ages, the length of time that Langford was offending

6

sexually (more than one year), and the size of Langford's victim pool (non-family members).

Before Dr. Gaines testified about the threats or Tammy's parole-protest letter, the trial court instructed the jury that hearsay evidence contained in the records Dr. Gaines reviewed was admitted only for the purpose of showing the basis of Dr. Gaines's opinion and could not be considered as evidence to prove the truth of the matter asserted. The court also included a similar limiting instruction in the written jury charge.

Langford also testified at trial. Although he denied sexually assaulting any of the girls, he admitted he had been convicted of sexually assaulting Lori and that he had pleaded guilty to sexually assaulting Cindy, Ginny, and Tammy. He denied ever threatening anyone.

## Sexually Violent Predator Act

In an SVP case, the State must prove beyond a reasonable doubt that a person is a sexually violent predator. TEX. HEALTH & SAFETY CODE § 841.062(a); *In re Commitment of Stuteville*, 463 S.W.3d 543, 552 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). A person is a "sexually violent predator" if he is a "repeat sexually violent offender" and "suffers from a behavioral abnormality that makes [him] likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE § 841.003(a). A "behavioral abnormality" is "a congenital or acquired

7

condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

## Standard of Review

We review evidentiary rulings using an abuse of discretion standard. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012); *Stuteville*, 463 S.W.3d at 544 (quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000)). A trial court abuses its discretion when it acts without regard to guiding rules or principles. *U–Haul Int'l, Inc.*, 380 S.W.3d at 132. We will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.*

## Admission of Evidence

In his first and second issues, Langford argues that the trial court abused its discretion by allowing Dr. Gaines to testify that Langford had threatened Tammy because this information, which was derived solely from Tammy's letter to the parole board, is hearsay and violates Texas Rules of Evidence 403 and 705(d) because it is more prejudicial than probative.[5]

---

[5]     On appeal, Langford argues that this evidence was highly prejudicial and had little probative value because Tammy's alleged sexual assault was unadjudicated. The record reflects, however, that Langford was charged by indictment with sexually assaulting Tammy, Langford pleaded guilty to the charge, and he was sentenced to thirty-three years' incarceration. Although he denied sexually assaulting Tammy at trial, Langford admitted that he had pleaded guilty to the offense.

8

## A. Applicable Law

An expert in a SVP Act civil commitment proceeding may disclose details regarding the underlying facts or data that the expert relied on in arriving at her opinion, including the details of adjudicated and unadjudicated sexual assaults. *See Stuteville*, 463 S.W.3d at 554–56; *see also* TEX. R. EVID. 705(a). The reasoning for this is that having an expert explain the facts she considered, and how those facts influenced her evaluation, assists the jury in weighing the expert's opinion that the person has a behavioral abnormality, which is the ultimate issue that the jury must determine. *See Stuteville*, 463 S.W.3d at 555; *see also In re Commitment of Talley*, 522 S.W.3d 742, 748–49 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

An expert's disclosure of the underlying facts or data on which she relied, however, is subject to the same relevancy constraints that govern the admission of other kinds of evidence. *See Talley*, 522 S.W.3d at 748 (citing TEX. R. EVID. 403 & 705(d)). Specifically, Texas Rule of Evidence 705(d) states:

> If the underlying facts or data [that the expert relied on] would otherwise be inadmissible, the proponent of the opinion may not disclose them to the jury if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect. If the court allows the proponent to disclose those facts or data the court must, upon timely request, restrict the evidence to its proper scope and instruct the jury accordingly.

TEX. R. EVID. 705(d).

9

Evidence may also be excluded under Rule 403 if the "probative value [of the evidence] is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Evidence is unfairly prejudicial when it has an undue tendency to suggest that a decision be made on an improper basis, commonly, but not necessarily, an emotional one." *In re Commitment of Anderson*, 392 S.W.3d 878, 882 (Tex. App.—Beaumont 2013, pet. denied).

Factors considered when applying the Rule 403 balancing test include: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *See Stuteville*, 463 S.W.3d at 555 (citing *Anderson*, 392 S.W.3d at 882).

**B.   Analysis**

Dr. Gaines's opinion that Langford suffers from a behavioral abnormality is based in large part on Langford's sexual deviance, namely, his pedophilic disorder. According to Dr. Gaines, sexual deviancy is a major risk factor for reoffending sexually and it was the most significant risk factor that she identified for Langford. She also testified that an offender's history of threatening victims is another risk factor for reoffending sexually and that the evidence that Langford had threatened

10

Tammy was helpful for her behavioral abnormality evaluation because the details of an offense "help to illustrate the [sexual] deviancy." Dr. Gaines's testimony about Tammy's allegation that Langford had threatened her is admissible under Rule 705(a) because Dr. Gaines relied on this detail of the adjudicated offense when formulating her opinion that Langford suffers from a behavioral abnormality. *See* TEX. R. EVID. 705(a); *see also Stuteville*, 463 S.W.3d at 554–56.

We note that the trial court gave the jury a contemporaneous limiting instruction, as provided by Rule 705(d), before Dr. Gaines testified about the threats or Tammy's parole-protest letter. *See* TEX. R. EVID. 705(d) (stating that underlying facts or data that expert relied on may not be admitted "if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect," but "[i]f the court allows the proponent to disclose those facts or data the court must, upon timely request, restrict the evidence to its proper scope and instruct the jury accordingly."). The limiting instruction, which was prepared by Langford, stated:

> The hearsay evidence contained in the records about [Langford's] underlying sex offenses, arrests, conduct while on probation or parole, prison disciplinaries, and other such hearsay would ordinarily not be admissible in this trial, but because the expert witness relied upon those records in forming the basis of their opinions, you can hear about these records for the very narrow purpose of explanation or support for the expert's opinions. You may not consider this hearsay information for any other purpose, including whether the facts alleged in the records are true.

The court also included the following limiting instruction in the written jury charge:

11

Hearsay is a statement other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Certain hearsay information contained in records reviewed by the experts was admitted before you through expert testimony. Such hearsay was admitted only for the purpose of showing the basis of the experts' opinion and cannot be considered as evidence to prove the truth of the matter asserted.

We must presume the jury followed these instructions; therefore, any potential harm arising from Dr. Gaines's testimony concerning the factual details of Tammy's sexual assault that she derived from Tammy's letter, including the threats, was cured by the limiting instruction. *See Stuteville*, 463 S.W.3d at 555; *Day*, 342 S.W.3d at 199.

Langford also argues that the evidence should have been excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403.

The first factor we consider when applying Rule 403's balancing test is the probative value of the evidence. Langford pleaded guilty to sexually assaulting Tammy and is serving a thirty-three year prison sentence for this offense. The details underlying this conviction, including Tammy's claim that he threatened her, are highly probative with respect to whether Langford suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, which is the ultimate issue that the jury must determine. *See Stuteville*, 463 S.W.3d at 556 (stating "details of the charged and uncharged offenses are highly probative

12

and helpful to the jury in explaining the basis" of expert's opinion that person suffers from behavioral abnormality); *see also In re Commitment of Mares*, 521 S.W.3d 64, 71 (Tex. App.—San Antonio 2017, pet. denied) (noting "high probative value and admissibility of testimony about the offense details in view of the purpose of the SVP Act to protect society from sexually violent predators with a behavioral abnormality that predisposes them to future predatory acts"). Given the high probative value of the evidence, this factor weighs in favor of admissibility. *See Stuteville*, 463 S.W.3d at 555–56.

The second factor is the potential of the evidence to impress the jury in some irrational way. *See id.* at 555 (citing *Anderson*, 392 S.W.3d at 882). Dr. Gaines testified that Langford made unspecified threats against Tammy. She did not testify about the details of the threats, only that they were made. Dr. Gaines did, however, testify about other disturbing facts about Tammy's assault that she learned of from other parts of the record.[6] Among other things, Dr. Gaines testified that Tammy and her sister Ginny had been sexually assaulted by their father and Langford in the same room and at the same time. According to Dr. Gaines, the two men "swapped off," ejaculated on the girls, and "high-fived" each other over the girls' bodies. Langford also made the girls dress up and engage in dirty dancing. Given the absence of details

---

[6] Langford is not challenging the admission of this testimony on appeal.

about the threats and the admission of other, more explicit information about the assaults, Dr. Gaines's testimony that Langford made unspecified threats to Tammy had only a slight potential to impress the jury in some irrational way and, therefore, this factor weighs in favor of admissibility. *See id.*

The third factor in the balancing test is the time needed to develop the evidence. *See id.* (citing *Anderson*, 392 S.W.3d at 882). The State asked Dr. Gaines one question about the letter and the alleged threats. Although Langford's counsel also cross-examined Dr. Gaines on the topic, and Langford was briefly questioned about the alleged threats, Dr. Gaines's and Langford's testimony on this issue only took up approximately four of almost eighty pages of testimony. Given the minimal amount of time used to develop the evidence, this factor also weighs in favor of admission.

The final factor in our analysis is the State's need for the evidence. *See Stuteville*, 463 S.W.3d at 555 (citing *Anderson*, 392 S.W.3d at 882). Dr. Gaines testified that one of the risk factors for reoffending sexually is an offender's use of threats against a child victim. In this case, the only evidence that Langford had threatened any of the four children he was convicted of sexually assaulting came from Tammy's letter. There was no other evidence of threats. Accordingly, the State's need for the evidence weighs in favor of admissibility. *See Stuteville*, 463 S.W.3d at 555.

14

Considering these factors, we conclude that the trial court could have reasonably determined that the probative value of Dr. Gaines's testimony that Langford had threatened Tammy was not "substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403.

We overrule Langford's first and second issues.

## Conclusion

We affirm the order of civil commitment.

Russell Lloyd
Justice

Panel consists of Justices Lloyd, Goodman, and Landau.