

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00254-CV

_____

IN RE: THE COMMITMENT OF PEDRO TORRES TORRES

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. D372-S-14827-21

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

Appellant Pedro Torres challenges his civil commitment as a sexually violent predator (SVP).  *See* Tex. Health & Safety Code Ann. ch. 841 (the SVP Act).  Torres raises two issues in which he challenges the factual sufficiency of the evidence to support the jury's verdict that he is a sexually violent predator and argues that the trial court erred by admitting evidence of unadjudicated sexual offenses.  Because the evidence is sufficient to support the jury's verdict, and because the trial court did not err by admitting evidence of unadjudicated sexual offenses, we will affirm.

## I. BACKGROUND

The State filed a petition to civilly commit Torres as an SVP.  Torres had previously been convicted of indecency with a child by contact and aggravated sexual assault of a child, both of which are sexually violent offenses for purposes of the SVP Act.[1]  *See id.* § 841.002(8)(A).

Two witnesses testified at the jury trial:  Torres and the State's expert, Dr. Darrel Turner.  Dr. Turner opined that Torres suffers from a behavioral abnormality that predisposes him to engage in predatory acts of sexual violence.  Torres admitted that he committed the predicate offenses but testified that he is no longer attracted to

---

[1]According to the State, Torres committed aggravated sexual assault of a child in 2000 and then again in 2004.  Torres committed indecency with a child by contact in 2004.

female children. Torres also stated that he has no plans to be around children upon his release.

The jury found beyond a reasonable doubt that Torres is an SVP. The trial court then ordered Torres civilly committed in accordance with Section 841.081 of the Texas Health and Safety Code. This appeal followed.

## II. THE LAW ON CIVIL COMMITMENT

At a trial on a State's petition seeking civil commitment, "[t]he judge or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator." *Id.* § 841.062(a). A person is an SVP if that person "(1) is a repeat sexually violent offender[ ] and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a)(1), (2). "Behavioral abnormality" has a statutory definition: "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

## III. THE RECORD BEFORE US

In addition to the two witnesses' testimony, the evidence at trial consisted of Dr. Turner's curriculum vitae and four penitentiary packets containing judgments from Torres's convictions for aggravated sexual assault of a child, indecency with a child by exposure, and indecency with a child by contact.

**A. Dr. Turner's Testimony**

According to Dr. Turner, in conducting civil commitment evaluations, he reviews the records related to the individual, interviews the individual, and also conducts testing and reviews the results to evaluate the individual's risk of reoffending.[2] Dr. Turner testified that the methodology he uses accords with his training as a forensic psychologist and is within the accepted standards in the field of forensic psychology. Dr. Turner also explained that his job as a forensic evaluator is to provide expert testimony to help the factfinder—in this case the jury—in reaching its decision.

After reviewing the pertinent records, Dr. Turner prepared a profile of Torres in preparation for his interview. According to Dr. Turner, he evaluated Torres "based on what research has shown and proven time and time and time again to be factors that increase a sex offender's likelihood of reoffending upon their release or after their release or decrease their likelihood of reoffending." Based upon his education, training, experience, and methodology used, Dr. Turner determined that Torres suffers from a behavioral abnormality.

**1. Convictions for Sexual Offenses**

Dr. Turner testified that the records he reviewed revealed that Torres committed his first sexual offense of fondling a child in 1974. Although Dr. Turner

---

[2]Dr. Turner testified that in this case, he also reviewed a deposition of Torres conducted several months after Dr. Turner interviewed him.

had limited information about this conviction, it appeared to him that Torres received a "probationary sentence" for this conviction.

According to the records, Torres next committed sexual offenses against S.F., the daughter of his girlfriend at the time. S.F. was eight years old when the sexual offending began, and it continued for three years. The records reviewed by Dr. Turner indicated that the abuse, which occurred every other weekend, included vaginal and anal intercourse. Torres also made S.F. fondle his penis. Although the offenses occurred around the year 2000, Torres was not convicted for the aggravated sexual assault of S.F. until 2005.

According to Dr. Turner, during his interview Torres denied committing the offenses against S.F. and said that S.F. was "actually coming on to him." But in his deposition testimony, Torres admitted to having anal intercourse with S.F. and to touching her vagina with his hand and mouth. He denied having vaginal intercourse with S.F., and Torres again accused S.F. of initiating the sexual encounter.

The next sexual offenses occurred during the summer of 2004[3] when Torres performed maintenance work at an apartment complex where he resided. According to the records reviewed by Dr. Turner, Torres committed sexual offenses involving

_____

[3]In the summer of 2004, Torres was in his early 50s.

three children—C.R., S.G., and D.J.—at the swimming pool[4] during his employment there.

C.R., who was 11 years old at the time, reported that Torres had fondled her breasts, buttocks, and vagina, that he had put his mouth on her breasts and vagina, that he had put his penis in her mouth, and that he had offered her money to go underwater and spread her legs. Torres was later convicted of the aggravated sexual assault of C.R.

During his interview with Dr. Turner, Torres denied committing any sexual offense against C.R. However, in his deposition, he admitted to making C.R. perform oral sex on him and touching her vagina with his mouth and fingers, but he also claimed that C.R. had been "flirty" with him and had initiated the sexual encounter.

In the records reviewed by Dr. Turner, another child, S.G., who was eight years old at the time of the offense, claimed that Torres had touched her bottom and vagina while she was in the swimming pool. Torres was convicted of indecency with a child by contact for touching S.G. Once again Torres denied to Dr. Turner that he had touched S.G. but admitted in his deposition that he had touched her.

Dr. Turner testified that in forming his opinion, he also considered Torres's conviction for indecency with a child by exposure. According to D.J., who was nine years old at the time of the offense, Torres exposed his penis to her after he told her

---

[4]Torres's duties included working at the swimming pool.

to go underwater and see how long she could hold her breath. D.J. also claimed that Torres told her she looked sexy in her bathing suit and offered her money to spread her legs for him. Dr. Turner stated that although this conviction is not a sexually violent offense, it is a risk factor making Torres more likely to reoffend. Torres told Dr. Turner that D.J. was a stranger prior to that day, and he admitted that he had exposed himself to her.

### 2. Unadjudicated Sexual Offenses

Dr. Turner testified over objection to unadjudicated sexual offenses committed by Torres that were included in the records provided to him. Included in those records was an allegation by a friend of S.F. that Torres made her touch his penis. Torres admitted in his deposition to committing this act. Also, C.R.'s nine-year-old sister alleged that Torres touched her "in the same way he touched [C.R.]." Another woman alleged that in 1994 when she was nine years old, Torres exposed himself to her and to others. She also said that he fondled her vagina, showed her pornography, and had her insert objects into her vagina while he watched. Yet another girl who lived in the apartment complex where Torres performed maintenance work claimed that Torres touched her breast but that her mother did not believe her at the time. And a woman came forward in July 2004 alleging that in 1979, when she was nine years old, Torres fondled her while babysitting her. Her parents had not believed her either.

7

### 3. Interview

Dr. Turner interviewed Torres for approximately two hours. He described Torres as calm, polite, and respectful. Among other things, they discussed Torres's employment and educational history.

### 4. Psychological Tests

As a part of his evaluation, Dr. Turner administered the Psychopathy Checklist Revised test (PCL-R) and the Static-99R test to Torres. Dr. Turner testified that the PCL-R measures the degree to which someone has characteristics of a psychopath, and according to Dr. Turner, Torres scored a 26 on this test—a score that places him in "the range of a high degree of psychopathic characteristics." Dr. Turner testified that he considers Torres to be a psychopath.[5]

The Static-99R test is an actuarial risk assessment that measures the likelihood that an offender will be convicted for reoffending. Although Torres scored low on the test, Dr. Turner explained that he did not feel that the test adequately captured Torres's level of risk.

### 5. Risk Factors of Reoffending

Dr. Turner diagnosed Torres with pedophilic disorder—a pattern of sexual attraction to prepubescent children—and adult antisocial behaviors. Dr. Turner

---

[5]Dr. Turner acknowledged that another expert, Dr. Stephen Thorne, had found that Torres does not have a behavioral abnormality and that he is not a psychopath. The record does not indicate the purpose of Dr. Thorne's evaluation of Torres or when that evaluation occurred.

described pedophilic disorder and antisociality as the two biggest risk factors, explaining that "when you have a sexually deviant interest and you have antisociality, which makes you feel no remorse and feel entitled to victimize people to satisfy it, that your risk considerably increases." Dr. Turner also identified Torres's persisting after punishment,[6] denying the offenses, and blaming the victims as risk factors for Torres.

But Dr. Turner explained that he also considered certain "protective" factors for Torres. Dr. Turner identified Torres's disciplinary history while incarcerated and his participation in self-help courses, Bible studies, and treatment as protective factors. Further protective factors included Torres's plans for after his release, his communication with his family, his lack of male victims, and his lack of significant mental health history. Dr. Turner testified that because Torres was over the age of 60, he is considered to be at a lower risk.[7] However, according to Dr. Turner, Torres's overall risk of reoffending did not decrease with age as expected because he was over 50 when he committed some of his sexual offenses.

## B. Torres's Testimony

At trial, Torres acknowledged that his first sexual offense occurred in 1974 and that he received probation for that charge. Torres also admitted that he sexually

---

[6] Dr. Turner explained that persistence after punishment means that Torres was caught for a sex offense, punished, and then went on to offend again.

[7] Torres was 69 years old at the time of trial.

offended against S.F., that he penetrated her anus and vagina, and that he looked at S.F. as a sexual object. Torres further admitted to sexual offenses against C.R., S.G., and D.J. when he worked at the apartment complex. While Torres denied committing some of the unadjudicated offenses, he acknowledged his nonsexual criminal charges that included trespass, unauthorized use of a motor vehicle, and assault. Torres also acknowledged that he had lied in his treatment when he claimed to be "drunk and high" when he offended.

Torres testified that he previously was attracted to children aged 10–12 who were "breastless, small hips, thin," but he claimed that he no longer had a sexual attraction to female children. Torres explained that he was currently in a nine-month sexual offender program, that therapy was changing his way of thinking, and that he now had the ability to control his behavior. Torres related that he felt remorse for his victims and that he knew that he had hurt them. Torres said he believed that having a good support system would also help him not to reoffend. After his release, Torres planned to live with his 90-year-old mother in her apartment complex that has no residents that are minors. Torres maintained that he had no plans to be around children and that he would go out with a chaperone.

## IV. FACTUAL SUFFICIENCY OF THE EVIDENCE

In his first issue, Torres argues that the evidence is factually insufficient to support the jury's SVP finding. Because we hold that the evidence is factually sufficient, we overrule the first issue.

10

The Texas Supreme Court recently clarified the standard governing a factual sufficiency review in the rare civil cases in which the burden of proof is beyond a reasonable doubt, like cases brought under the SVP Act. *See In re Commitment of Stoddard*, 619 S.W.3d 665, 678 (Tex. 2020). When reviewing the factual sufficiency of the evidence to support a civil commitment, we are to determine whether, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met. *Id.*

Torres claims that there are several "[u]ndisputed facts that do not support the jury's verdict": (1) his age reduces his risk, (2) he did not complete sex offender treatment, (3) his prison disciplinary record is a protective factor in his favor, (4) he does not have an antisocial personality disorder, and (5) he has multiple protective factors aside from his prison disciplinary record.

As to Torres's age, while Dr. Turner testified that Torres's age should have put him at a lower risk, it actually did not lower the risk as much as would be expected because he committed offenses when he was over the age of 50.

With regard to his completion of sex offender treatment, Torres contends that Dr. Turner believed Torres had completed sex offender treatment but that it is undisputed that he did not complete sex offender treatment. And Torres argues that Dr. Turner conceded that Torres's progress in sex offender treatment could affect his

11

opinion on Torres's behavioral abnormality. First, Dr. Turner testified that it was his understanding that Torres had completed sex offender treatment, but that it was possible he did not. Second, while Dr. Turner acknowledged that progress in sex offender treatment could affect his opinion on the risk of recidivism, he stated that it would not have changed his opinion regarding Torres. Torres may be correct that the fact that he has not completed sex offender training is undisputed; however, according to Dr. Turner, that fact did not change Dr. Turner's opinion. Nor does that fact render the evidence factually insufficient to support the jury's verdict.

And although Dr. Turner acknowledged that Torres had other protective factors, including his prison disciplinary record, his participation in self-help courses, and his completion of Bible studies, Dr. Turner opined that while these factors can reduce risk, they do not negate it. Furthermore, Dr. Turner explained that it is common for sexual offenders to not receive a lot of disciplinary infractions in prison, and he also pointed out that Torres had not been around children while he was in prison. While Torres is correct that it is undisputed that he has certain protective factors, this does not render the evidence factually insufficient to support the jury's verdict.

As to his contention that he had not been diagnosed with an antisocial personality disorder, this argument ignores Dr. Turner's testimony that he had diagnosed Torres with adult antisocial behavior. Torres's antisocial behavior included lack of remorse, sense of entitlement, creating victims, grooming and manipulation,

12

and pathological lying.[8] Additionally, as the Supreme Court has explained, although "[a] medical diagnosis of a person's mental health may certainly inform an assessment" of whether a person has such a behavioral abnormality, that does not end the inquiry. *See In re Commitment of Bohannan*, 388 S.W.3d 296, 306 (Tex. 2012). "[T]he principal issue in a commitment proceeding is not a person's mental health but whether he is predisposed to sexually violent conduct." *Id.*

Torres identifies disputed facts that he contends could not have been credited in favor of the verdict by a reasonable jury: (1) the presence of "stranger victims", (2) the contradictory findings of Dr. Thorne, and (3) the length of Torres's sentences.

Regarding evidence as to "stranger victims", Dr. Turner identified "stranger victims" as a risk factor for sexual deviance and antisociality. Dr. Turner testified that Torres admitted to him that S.G. and D.J. were strangers. There was also evidence that he was acquainted with them. Torres relies on this contradictory evidence to suggest that Dr. Turner used incorrect data to form his opinion. It was within the province of the jury, as the factfinder, to weigh the evidence, judge the credibility of the witnesses' testimony, and resolve any conflicts in the evidence. *See In re Commitment of Williams*, 539 S.W.3d 429, 440–41 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *In re Commitment of Stuteville*, 463 S.W.3d 543, 552 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *see also Stoddard*, 619 S.W.3d at 668 (stating that, in

---

[8]Dr. Turner could not diagnose Torres with antisocial personality disorder because he did not have evidence of behavioral problems prior to age 12.

conducting factual sufficiency review in an SVP case, we "may not usurp the jury's role of determining the credibility of witnesses and the weight to be given their testimony"). Additionally, the jury was free to believe all, part, or none of a witness's testimony. *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied). We may not substitute our judgment for that of the jury. *See Stoddard*, 619 S.W.3d at 677.

With regard to the contradictory expert opinions, Dr. Turner scored Torres with a 26 on the PCL-R test and considered Torres to be a psychopath.[9] On the other hand, Dr. Thorne scored Torres lower on the PCL-R test and did not find him to be a psychopath. Dr. Thorne also found that Torres does not have a behavioral abnormality. Torres did not call his own expert, nor did he call Dr. Thorne to testify.

Having heard evidence that Dr. Thorne's findings were contrary to those of Dr. Turner, again, the jury, as the factfinder, was free to weigh the evidence, judge the credibility of the witnesses' testimony, and resolve any conflicts in the evidence. *See Williams*, 539 S.W.3d at 440–41; *Stuteville*, 463 S.W.3d at 552; *see also Stoddard*, 619 S.W.3d at 668. Additionally, the jury was free to believe Dr. Turner's testimony and disbelieve the evidence regarding Dr. Thorne's opinion. *Mullens*, 92 S.W.3d at 887. In

---

[9]Torres argues that Dr. Turner inflated the score on the PCL-R test and found a behavioral abnormality to achieve a desired result. There is no evidence that Dr. Turner inflated the score on the PCL-R test.

other words, as to the contradictory expert findings, the jury was free to credit Dr. Turner's testimony in favor of the verdict, and we will not disturb that on appeal.

Torres next argues that the lengths of his sentences show that "the State is trying to accomplish through this civil-commitment proceeding, which provides for a 'long-term' supervision and treatment process, what it failed to accomplish through four related criminal proceedings: Torres' potentially permanent incapacitation." But, as the Texas Supreme Court has implicitly pointed out, the length of sentence on the underlying convictions is not a ground for reversal on factual-sufficiency grounds. *See Stoddard*, 619 S.W.3d at 677.

The question before us is whether the evidence is sufficient to support the jury's findings. The jury heard substantial behavioral abnormality evidence, including the expert testimony of Dr. Turner, whose opinion was based on the following facts beyond Torres's offense history:

- Torres continued to reoffend after punishment.

- Torres denied the offenses or blamed the victim for coming onto him.

- Torres offended in public places.

- Torres has pedophilic disorder.

- Torres has adult antisocial behaviors that increase his likelihood of reoffending.

15

- Torres has high psychopathic characteristics, and Dr. Turner characterized him as a psychopath.

- Torres does not understand why he committed the offenses.

The disputed evidence that a reasonable factfinder could not have credited in favor of the jury's verdict, along with undisputed facts contrary to the verdict, are not so significant in light of the entire record such that the jury could not have found beyond a reasonable doubt that Torres suffers from a behavioral abnormality that makes him an SVP. *See id.* at 678. We therefore hold that the State presented factually sufficient evidence to support the jury's finding that Torres is an SVP. We overrule Torres's first issue.

## V. ADMISSION OF UNADJUDICATED OFFENSES

In his second issue Torres argues that the trial court erred by admitting evidence of unadjudicated sexual offenses. Because we hold that the trial court did not abuse its discretion by admitting the evidence of unadjudicated sexual offenses, we overrule the second issue.

A trial court's rulings admitting or excluding evidence are reviewable under an abuse of discretion standard. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis in the record for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if the court

16

acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

Torres objected to Dr. Turner's testimony about the unadjudicated offenses arguing that the probative value of the evidence was outweighed by its prejudicial effect. *See* Tex. R. Evid. 403, 705(d). Rule of Evidence 705(d) regarding expert testimony states that "[i]f the underlying facts or data would otherwise be inadmissible, the proponent of [an expert] opinion may not disclose them to the jury if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect." Tex. R. Evid. 705(d). Rule of Evidence 403 further provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Factors considered when applying the Rule 403 balancing test "include the probative value of the evidence, the potential of the evidence to impress the jury in some irrational way, the time needed to develop the evidence, and the proponent's need for the evidence." *In re Commitment of Anderson,* 392 S.W.3d 878, 882 (Tex. App.—Beaumont 2013, pet. denied).

As detailed above, Dr. Turner testified over objection about five unadjudicated offenses involving girls who made sexual offense allegations against Torres. This Court and others have held that an expert in an SVP Act civil commitment proceeding may disclose details regarding the underlying facts or data that the expert

relied on in arriving at his opinion. *See In re Commitment of Guest,* No. 02-19-00295-CV, 2021 WL 1245087, at *8–9 (Tex. App.—Fort Worth Apr. 1, 2021, pet. denied) (mem. op.); *Stuteville,* 463 S.W.3d at 555; *Anderson,* 392 S.W.3d at 882; *see also* Tex. R. Evid. 705 (a) (stating "expert may . . . disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data"). As courts have explained, in an SVP case, having an expert explain the facts that he considered, including past sexual offenses, and how those facts influenced his evaluation, may assist the jury in weighing the expert's opinion on the ultimate issue. *See Stuteville,* 463 S.W.3d at 555; *In re Commitment of Young,* 410 S.W.3d 542, 557 (Tex. App.—Beaumont 2013, no pet.).

Dr. Turner testified that it is common practice to review records of all evidence of sexual offenses. Dr. Turner stated that he does not consider just evidence that resulted in a conviction, but also charges that were dropped, as well as mere allegations where criminal cases were never filed.[10] Dr. Turner explained that the allegations here showed a pattern of sexual attraction to prepubescent children, and he relied on all of the allegations in determining that Torres has a pedophilic disorder.

We cannot say that the trial court abused its discretion by determining that the probative value of this evidence was not substantially outweighed by the danger of

---

[10]According to Dr. Turner, such allegations provide evidence of grooming.

18

unfair prejudice.[11]  *See* Tex. R. Evid. 403.  Based on this record, the trial court could have reasonably concluded that the facts and details related to Torres's offenses would be helpful to the jury in weighing both his and Dr. Turner's testimony, as well as in understanding the basis for Dr. Turner's opinion that Torres suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.  Given the purpose for admitting the evidence in this case and the trial court's limiting instruction we hold that the trial court did not abuse its discretion by admitting evidence of uncharged offenses.  We overrule the second issue.

---

[11]Furthermore, in its charge, the trial court defined hearsay and instructed the jury that:

> In this case, certain hearsay information contained in records reviewed by an expert or experts was admitted before you through expert testimony.  Such hearsay was admitted only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted.

Absent record evidence to the contrary, we presume that the jury followed the court's limiting instructions.  *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003).  Torres has not directed this court to any evidence that the jury ignored the trial court's instructions.

# VI. CONCLUSION

Having overruled Torres's two issues, we affirm the trial court's order of civil commitment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  February 23, 2023